271 So.2d 181 (1972)
George Pierpont RILEY, Appellant,
v.
Mary Jordan RILEY, Appellee.
No. Q-121.
District Court of Appeal of Florida, First District.
October 30, 1972.
*182 John J. Higgins, of Law Offices of Daniel F. Hubsch, Jacksonville, for appellant.
J. Donald Bruce, of Bruce, Smith & Proctor, Jacksonville, for appellee.
JOHNSON, Judge.
This is an appeal from a final judgment ordering that the appellant's petition for the dissolution of his marriage be dismissed for the reason that "this marriage of thirty-nine years has not been proven to be irretrievably broken."
The primary question before this Court is whether the lower court erred in dismissing the petition in light of the particular record before it and in conformity with the new dissolution of marriage laws of Florida.
The parties herein had been married for almost 40 years when the appellant-husband, age 63, filed his Petition for Dissolution of Marriage in July of 1971, alleging that the parties had ceased to live together as husband and wife and that the marriage was irretrievably broken. The appellee-wife answered the petition by denying that this ground for dissolution existed and alleging that the husband had become temporarily enamored with another woman but that, within a reasonable period of time, he will wish to reconcile with appellee.
The appellant-husband testified that during the past ten or twelve years of the marriage, the parties had had no companionship, love, affection or home life, and that they had been drifting along for years with no reason for staying together except for the four children, who had now reached their majority. He admitted that prior to April of 1971, the parties had had no real domestic problems that could not be surmounted. They had had no arguments, because there was nothing to argue about, there being a feeling of indifference between them.
The appellee-wife testified that the parties had lived a happy life together until appellant met the Georgia widow who proposed marriage to him. When asked what specific acts of companionship between the parties existed within the last five or six years, appellee stated that they went to church and that they went out to dinner quite a bit. When asked what she had in common with her husband now that she could base a reconciliation on, appellee answered "39 years".
*183 Upon these facts, the trial judge found that the marriage had not been proven to be irretrievably broken and the petition was dismissed. The husband brings this appeal contending that it was error to dismiss the petition inasmuch as the purpose of the new dissolution of marriage law is to preserve the integrity of marriage and to safeguard meaningful family relationships, and that the present record shows that the integrity of the subject marriage had been destroyed prior to the filing of this suit and there existed no meaningful family relationship to be safeguarded.
To our knowledge, this is a case of first impression under the new dissolution of marriage law of Florida, Chapter 61, F.S.A. We are called upon to determine whether the trial court abused its discretion in dismissing the petition in light of the reforms promulgated by Chapter 61 and the record before this Court.
The basic substantive change in the law is the elimination of fault or guilt as grounds for granting or denying a dissolution of the marriage. The traditional fault-oriented grounds for divorce formerly contained in F.S. § 61.041, F.S.A. have been abolished and replaced with only two grounds; to wit: a showing that the marriage is "irretrievably broken" or mental incompetence of one of the parties. F.S.A. § 61.052.
The Legislature has not seen fit to promulgate guidelines as to what constitutes an "irretrievably broken" marriage. It is suggested that this lack of definitive direction was deliberate and is desirable in an area as volatile as a proceeding for termination of the marital status. Consideration should be given to each case individually and predetermined policy should not be circumscribed by the appellate courts of this State.
Thus, we are hesitant to set forth specific circumstances which trial courts could utilize as permissible indices of an irretrievable breakdown of the marital status. Were we to attempt to do so, we feel that the basic purpose of the new dissolution of marriage law would be frustrated. Such proceedings would either again become primarily adversary in nature or persons would again fit themselves into tailor-made categories or circumstances to fit judicially defined breakdown situations. It is our opinion that these two problems are the very ones which the Legislature intended to eliminate.
While the Legislature did not define an "irretrievably broken" marriage, it has stated that the purpose of the new law is to preserve the integrity of marriage and to safeguard meaningful family relationships.[1] Whether or not the marriage is irretrievably broken is left to the trial court's determination based upon the evidence adduced at the hearing.[2] Such evidence need not be corroborated and there need be no showing of fault to determine that the marriage has in fact broken down.
Without attempting to set forth specific guidelines, we think the central inquiry in each situation should be a subjective, rather than an objective, one. In other words, observable acts and occurrences in the marriage relationship and the causes of the state in which the parties find themselves are not as important or controlling as the question of whether the marriage is in fact ended because of the basic unsuitability of the spouses for each other and their state of mind toward the relationship. Self-restrained spouses who do not permit outward manifestations of the failure of their marriage should not be penalized by the denial of the dissolution petition. If refusal of dissolution would amount to a legal perpetuation of a relationship which has ceased to exist in fact, the petition should be granted.
In every case, the important issue is the possibility of a reconciliation and *184 the marriage as a whole must be considered. Before dissolution is granted, the court should be satisfied that the parties can no longer live together because their difficulties are so deep and substantial that no reasonable effort could eradicate them so as to enable the parties to live together in a normal marital relationship. If the trial judge doubts the petitioner's testimony that his or her marriage has irretrievably broken down, he should continue the proceedings to determine if reconciliation is possible.
Applying these principles to the case now before us, we feel that the trial judge erred in flatly dismissing the petition. If one marital partner has made the considered decision that the relationship should be terminated, perhaps it may properly be said that the marital relationship has broken down. However, as noted above, if the trial court doubts this spouse's testimony, we feel that the action should be continued to determine if reconciliation is possible. While the power of the State should be exerted to preserve the marriage if it can be preserved,[3] it should not perpetuate a legal relationship which has or will cease to exist in fact. The power to continue the proceedings for a reasonable length of time not to exceed three months to enable the parties themselves to effect a reconciliation, or to order either or both parties to consult professional counselors, is authorized by F.S.A. § 61.052(2)(b). It is our considered opinion that either of these alternatives would be a better disposition of the present case and would be more in keeping with the new dissolution of marriage laws of this State. If, however, a temporary suspension of the proceedings or consultation with professional counselors fails to effectuate a reconciliation between the parties, the trial judge should then reconsider the issue of whether the marriage has in truth and in fact been irretrievably broken. If this issue is resolved in the affirmative, then a judgment dissolving the marriage should be rendered; otherwise, the prayer for dissolution should be denied and the complaint dismissed.
We therefore reverse the judgment below and remand this cause for further proceedings consistent with the views expressed herein.
Reversed and remanded.
WIGGINTON, J., concurs.
SPECTOR, C.J., dissents.
SPECTOR, Chief Judge (dissenting):
I respectfully dissent from the majority opinion remanding this case for further proceedings. In my view, the trial court's final judgment denying appellant's petition for dissolution of his marriage to appellee should be affirmed.
A review of the evidence which was before the trial court convinces me that it was more than adequate to support the Chancellor's finding that the subject marriage is not irretrievably broken.
It is important to note that the legislature, whatever its stated purpose and intent during the speechmaking that precedes the passage of new laws, used the word "irretrievably" in describing the degree and nature of the "breakage" in the bonds of matrimony before that marriage can be dissolved by the courts. Irretrievably broken. What does it mean? It certainly does not mean temporarily broken. Nor does it mean that a marriage is taking some heavy pounding on the rocky shores of the sea of matrimony. Many a marriage has survived such storms.
Experience teaches that many a married couple have engaged in what may best be described as near mortal combat, both physically and emotionally, with each other. They rush to a lawyer seeking a divorce and during the pendency of divorce *185 proceedings fight over money, the children, the dogs, the cats, and, of course, the in-laws. All sorts of invective and abuse are hurled between them. Such conduct clearly constituted extreme cruelty under the old law and entitled one of the parties  usually the wife in this part of the country  to a divorce decree dissolving the marriage. Yet, can it be said that all such marriages as are described above are "irretrievably broken"? Of course not! It remains to be seen whether the language chosen by the legislature unwittingly established a more difficult criteria to warrant a dissolution of a marriage than that which existed under the old law. The surprisingly large number of times that the husband and wife walk into their lawyer's office arm-in-arm and announce their desire to end the divorce suit because they have resolved their differences and are willing to try to restore the marriage clearly belies a conclusion  legal or factual  that their marriage was "irretrievably broken", not withstanding the admitted turbulance which existed.
Marriages are durable. They break, of course. But not all breaks are beyond repair. Especially when only one spouse wants out and the other is willing to reconcile upon passage of the temporary diversion which caused the rift.
In the case at bar, the Chancellor obviously felt that there was no evidence that this marriage is irretrievably broken. As stated by appellee's counsel, "... the parties over the many years of their marriage lived together peacefully and happily and by their efforts acquired a modest estate. Something more than two months before the trial of this action, a third party entered the picture, who, because of her recent widowhood, wished for companionship and had the material wealth to attract the petitioner husband away from what theretofore had been domestic tranquility in the parties' lives. In other words, in a very short period of time the relationship between husband and wife changed from one of good personal relationship supported by the wherewithal of maintaining a satisfactory standard of living furnished by a modest income to one wherein the husband allows himself to be enticed away from his wife through the proposal of a well financed, but apparently lonely widow able to endow him with material benefits far beyond those which his own labors could produce."
In my view, all that appellant's evidence demonstrates is that he would like to enjoy the companionship of the widow lady and the comforts that her money will provide. But, in no way has it been demonstrated that "it's all over" between him and his wife. That is what "irretrievably broken" means.
Appellant's effort to turn his back on the woman who ministered to his needs for some 40 years should not be assisted by this court. The mere absence of roman candles or champagne and strawberries for breakfast in the twilight years of a marriage is not proof that the marriage should be dissolved. Only recently, our State Supreme Court has reiterated the universally recognized rule that:
"... the concept of marriage as a social institution that is the foundation of the family and of society remains unchanged. See 38 Am.Jur., Marriage, Sec. 8, p. 185. Since marriage is of vital interest to society and the state, it has frequently been said that in every divorce suit the state is a third party whose interests take precedence over the private interests of the spouses. [Citations omitted]" Posner v. Posner, 233 So.2d 381, 382-383 (Fla. 1970).
In Posner, supra, the court, quoting from Underwood v. Underwood, 12 Fla. 434, stated what I understood the law still to be as follows:
"... it `would be aiming a deadly blow at public morals to decree a dissolution of the marriage contract merely because the parties requested it;'" Posner, 233 So.2d at p. 383.
*186 The trial judge had before him evidence which when considered and weighed by him in light of his insight and experience in matters concerning domestic relations supported his conclusion that the husband had failed to prove by a preponderance of the evidence that the marriage was irretrievably broken.
I would affirm the Chancellor's ruling that the evidence fails to demonstrate that the marriage of these parties is irretrievably broken.
NOTES
[1] F.S.A. § 61.001(2)(a).
[2] F.S.A. § 61.052(2).
[3] McKim v. McKim, 6 Cal.3d 673, 100 Cal. Rptr. 140, 493 P.2d 866 (1972).