KRETZSCHMAR v KRETZSCHMAR

1. DIVORCE—EVIDENCE—STATUTES.

A trial court improperly dismissed the plaintiff husband's complaint and should have granted the husband a judgment of divorce where the evidence depicts a history of bitter accusation, lack of respect, physical violence, insensitivity and protracted separation, and a husband who will not return to his wife under any circumstances and a wife who denies any personal responsibility for the failure of her marriage, both parties concede that there has been a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed, and the record contains overwhelming evidence that there is no reasonable likelihood that the marriage of these parties can be preserved; the proper statutory criterion is "reasonable likelihood", not the *possibility* that the marriage could be preserved (MCLA 552.6[3]).

2. DIVORCE — NO-FAULT DIVORCE — CUSTODY — SUPPORT — ALIMONY — PROPERTY DIVISION — LEGISLATIVE INTENT — STATUTES.

The Legislature in enacting the "no-fault" divorce statute revised the conceptual basis for granting divorce but it did *not* intend to modify the traditional grounds for determining custody, support, alimony, and property division; the various factors heretofore held to be relevant, including conduct of the parties, remain relevant to a proper adjudication of custody, alimony, support, and property division (1971 PA 75; MCLA 552.23).

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 May 16, 1973, at Lansing. (Docket No. 15248.) Decided July 13, 1973.

Complaint for absolute divorce by John C. Kretzschmar against Albertina P. Kretzschmar. Counterclaim by defendant against plaintiff seeking

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur 2d, Divorce and Separation § 376 *et seq.*
[2] 24 Am Jur 2d, Divorce and Separation § 20.

separate maintenance. Complaint and counter-claim dismissed. Plaintiff appeals. Reversed and remanded with instructions.

*Buesser, Buesser, Snyder & Blank,* for plaintiff.

*Kenney, Kenney, Chapman & Prather,* for defendant.

Before: FITZGERALD, P. J., and T. M. BURNS and ADAMS,* JJ.

ADAMS, J. Plaintiff appeals from the dismissal of his complaint for absolute divorce from defendant.

Plaintiff and defendant were married in 1944. They have three living children, one of whom was a minor residing with her parents at the time of trial. Plaintiff filed an amended complaint seeking a divorce under 1971 PA 75; MCLA 552.6; MSA 25.86. Defendant filed a counterclaim seeking separate maintenance under 1971 PA 75; MCLA 552.7; MSA 25.87.

Dr. Kretzschmar, plaintiff, testified that marital difficulties commenced in 1957 when he, along with his sister, converted an inherited private hospital into a nursing home and plaintiff gave up his general medical practice. Defendant criticized John A. Callahan, plaintiff's sister's husband and plaintiff's business partner, regarding his management of the nursing home enterprise. Plaintiff testified that although he regarded Mr. Callahan as an extremely able businessman, defendant accused Callahan of being incompetent, untrustworthy and a "sharpie". According to plaintiff, defendant believed that Callahan was unnecessary and

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

that plaintiff could manage the business without him. Defendant also allegedly accused plaintiff of being stupid, lazy, inefficient and indolent.

Plaintiff further testified that marital arguments and conflicts continued throughout the 1960's, during which time defendant allegedly called him mentally incompetent, suggested that he had had a stroke, and described him as a drug addict and an abortionist. These accusations were reportedly made in the presence of the children and to a third person.

Dr. Kretzschmar stated that during a heated argument in the marital home in August 1969 defendant clawed him with her fingernails and he responded by spanking her. Subsequent to this incident plaintiff spent little time at the marital home and moved out completely early in 1970. He admitted that in 1969 he saw another woman two or three times a week, spent money on her, and refused to give up this association.

Mrs. Kretzschmar testified that plaintiff had been physically violent on numerous occasions. She stated that at the time of the August 1969 altercation plaintiff had arrived home intoxicated and, when she attempted to dissuade him from leaving to visit another woman, he knocked her down and abused her physically and verbally. Defendant stated—and plaintiff admitted—that plaintiff had spent a considerable amount of time away from home without telling defendant where he was; that plaintiff sometimes came home intoxicated; and that he struck defendant and called her obscene names. Mrs. Kretzschmar denied any wrongdoing on her part.

Defendant related that plaintiff's personality had changed drastically for the worse during the period in question, thus leading her to believe that

he was mentally incompetent. Plaintiff's alleged excessive use of amphetamines prompted defendant's description of him as a "drug addict".

At the time of trial the parties had not lived together for over two years and had had no sexual relations for over three years. Both parties agree that, in terms of the divorce statute, there has been "a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed". Defendant contends the marriage can be saved and is willing to consult a marriage counselor to further a reconciliation. Plaintiff refuses to see a marriage counselor or psychiatrist and steadfastly maintains that he has no desire for reconciliation.

The opinion of the trial judge is as follows:

"It is a marriage of long standing. There were four children of the marriage; three of whom are still living; one still a dependent under the age of 18.

"These parties have, over a long period of time over their marriage, acquired considerable property. They have apparently worked together on this since marriage, and I think the marriage occurred while the plaintiff was still in school so to speak, and getting his medical degree.

"Since the institution of this marriage, various things have occurred, one of which—probably the thing that precipitated this divorce—is the fact that these parties became possessed of a considerable amount of property. It is the claim of the plaintiff, at least, because of this the defendant has become an impossible partner in this marriage, and it has caused him to leave.

"Now, I have listened quite carefully to that phase of it because as far as I'm concerned, we would have to consider first here whether this marriage is capable of being salvaged. It is quite noteworthy in this case that most of the grounds for divorce [which] have been detailed here seem to have arisen at a period of time when the financial position of the parties had grown

considerably, and have increased in importance in their eyes. From that point on, apparently, the plaintiff has become rather indifferent to his marriage; that he has sought other companionship; that he has become abusive physically to the defendant, has used intoxicating liquors to excess, according to the defendant, and reliance upon drugs to an extent that certainly it was not conducive to his best welfare or to his behavior towards the defendant.

"Some of the language displayed here or related here as used by the plaintiff towards the defendant was certainly 'gutter' language, and to the worse extent, and it would seem to me that with a family in the particular situation that these folks were it was particularly vile and vulgar and very unseemingly for a man to use towards his wife. During all of this, of course, the defendant apparently has sought the assistance of a psychiatrist and has urged the plaintiff to seek marriage counseling, which the plaintiff has consistently refused to do, his own reasons being that he did not have confidence in the marriage counselor's advice nor in the assistance of a psychiatrist.

"The defendant consistently maintains the marriage can still be salvaged. She still has love for her husband and she believes a reconciliation is possible, if he would approach the marriage in a proper light and with due consideration for the period of time that they have been married and their problems.

"Now everything has fallen apart, apparently, because of two things, and I think they are the money that's involved here and the other party involved, and this, of course, brings to mind the old long adage about the wrath of a woman's fury, as I think we can all say has been amply demonstrated in this case.

"My own disposition of this case is to deny relief, and I am mindful of the no-fault claim and so on, but I think we also have an obligation to look at these things realistically and after a hearing and the parties having testified as to what can be done and what should be done under the circumstances, I don't think these parties should just let it drop. I think they should give this another try. Now, this is my version of the case as stated here and as related. I will leave things right

there. At least relief is denied. I think in view of the fact that Mrs. Kretzschmar has indicated a disposition to, on her part, want to reconcile, and made efforts to do so, I think we should also deny the separate maintenance and let the parties work out their own solution to this matter."

The court denied relief to either party, directed entry of judgment of dismissal, and denied plaintiff's motion to reconsider and amend findings and his motion for new trial. Plaintiff appealed from the dismissal of his complaint.

On January 4, 1973 the trial court entered an order requiring plaintiff to pay all arrearage existing under an *ex parte* order regarding custody, support, and other relief which the lower court had issued on June 30, 1971. Plaintiff thereupon filed with this Court an emergency application for leave to appeal from the trial court's January 4 order and moved for immediate consideration thereof. This Court on February 1, 1973 denied the emergency application for leave to appeal, granted the motion for immediate consideration, ordered "that the order of the trial court dated June 30, 1971 shall not be enforced, except as to custody, pending final appeal in the main case", and reduced plaintiff's payments from $200 to $100 per week for child support, and from $200 to $100 per week for alimony until final disposition of this appeal.

## *Issue I*

*Where the parties to a divorce proceeding agree that there has been a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed, where one of the parties refuses marriage counseling and has no desire for reconciliation, and where the parties have*

*neither cohabited nor lived in the same house for*
*several years, should the trial judge have granted*
*a divorce?*

MCLA 552.6(3); MSA 25.86(3) provides:

"The court shall enter a judgment dissolving the
bonds of matrimony if evidence is presented in open
court that there has been a breakdown in the marriage
relationship to the extent that the objects of matrimony
have been destroyed and there remains no reasonable
likelihood that the marriage can be preserved."

Jason L. Honigman, in his article entitled *What
"No-Fault" Means to Divorce,* 51 Mich State Bar J
16, 18 (1972), has written:

"At the base of the marital relationship is the will-
ingness of the parties to live together. If they are
unwilling to do so, for whatever reason or whoever is at
fault, the marital relationship is in fact terminated and
'the objects of matrimony have been destroyed.' Why
they are unwilling to live together need be of no inter-
est to the law, notwithstanding its concern to the
parties or its sociological significance. It is enough
under the law that the marital relationship has in fact
been terminated.

"Nor does the law require that both parties subscribe
to the conclusion that they are unwilling to live to-
gether. If either of the parties is convinced that this is
so and acts accordingly, it becomes a fact that the
marital relationship has terminated. Unlike the prior
law, the Act does not require preservation of legal
status to the empty shell of a marriage which has in
fact been destroyed, whether by the conduct of one or
both of the parties.

"The interest of society in family preservation is still
deeply ingrained and the Act encourages preservation
of the marriage where possible. Some marriage break-
downs are of a temporary nature or, at least, the
decision to permanently terminate the relationship has
not yet been reached. The law thus imposes the limita-
tion that divorce is to be granted only if 'there remains

no reasonable likelihood that the marriage can be preserved.' "

We have reviewed the record and have detailed some of the unfortunate facts in this case. This evidence depicts a history of bitter accusation, lack of respect, physical violence, insensitivity and protracted separation, and reveals a husband who will not return to his wife under any circumstances and a wife who denies any personal responsibility for the failure of her marriage. Both parties concede that there has been a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed. In addition, the record contains overwhelming evidence that there is no reasonable likelihood that the marriage of these parties can be preserved. The trial court, instead of applying the proper statutory criterion of "reasonable likelihood", erroneously utilized as a standard the *possibility* that this marriage could be preserved.

Plaintiff's complaint was improperly dismissed, and he is entitled to a judgment of divorce.

## *ISSUE II*

*What criteria should the trial court consider in granting relief to the parties?*

The question next arises as to what factors the trial judge should take into account in determining the other aspects of this case, such as custody, support, alimony, and property settlement. Has enactment of 1971 PA 75 altered the criteria proper for consideration in adjudicating other issues in a divorce proceeding? Specifically, is the conduct of the parties a relevant factor?

In *In re Marriage of Williams,* 199 NW2d 339, 342 (Iowa, 1972), the Iowa Supreme Court exam-

ined "what, if any, consideration fault of the spouses is to be given in awarding property settlement, alimony or support payments under the revised [dissolution of marriage] statute".[1] The Court noted that the Divorce Laws Study Committee of Iowa had in its original report proposed that *all evidence* should be permitted in determining marital breakdown and had specified nine separate fault criteria. The Iowa Legislature, however, rejected this recommendation and instead eliminated all fault grounds. Based upon this legislative history, the *Williams* Court concluded (p 345):

"As pointed out, our determination that the legislative purpose in enacting chapter 1266 was to eliminate fault grounds as a standard for granting dissolution of a marriage was arrived at by taking into account the circumstances in which the legislature adopted chapter 1266 * * * and the fact that portion of the Divorce Study Committee setting forth the kinds of evidence to be permitted in determining marital breakdown was rejected in adopting the act * * * .

"In order to carry out this obvious legislative intent and give effect to the object sought to be accomplished, we hold not only the 'guilty party' concept must be eliminated *but evidence of the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse must also be rejected as a factor in awarding property settlement or an allowance of alimony or support money."* (Emphasis added.)

Unlike the holding in *Williams,* an analysis of MCLA 552.23; MSA 25.103[2] in the context of 1971

---

[1] Chapter 598, Code of Iowa, 1971.

[2] MCLA 552.23; MSA 25.103 provides in pertinent part as follows:

"(1) Upon every divorce from the bond of matrimony and also upon every divorce from bed and board if the estate and effects awarded to either party shall be insufficient for the suitable support and maintenance of either party and such children of the marriage as shall be committed to the care and custody of either party, the court may further award to either party such part of the real and personal estate of either party and such alimony out of the estate real and

PA 75 compels the conclusion that although the Michigan Legislature revised the conceptual basis for granting divorce it did *not* intend to modify the traditional grounds for determining custody, support, alimony, and property division.

The Michigan Law Revision Commission in its 1970 report to the Legislature recommended enactment of a "non-fault" divorce statute, including a revision of the existing alimony, support, and property division section.[3] However, when introduced in the Michigan House of Representatives as House Bill 4575, the amendatory language suggested by the Revision Commission[4] had been deleted.[5] Significantly, the Senate, in considering HB 4575 after its passage by the House, added—by way of amendment—modifying language analagous to that originally proposed by the Revision Commission.[6] Of equally crucial importance is the fact that the House refused to accept the Senate amendment,[7] whereupon the Senate receded from the amendment[8] and 1971 PA 75 was enacted with

personal, to be paid to either party in gross or otherwise as it shall deem just and reasonable, having regard to the ability of either party and the character and situation of the parties, and all the other circumstances of the case."

Identical language obtained at the time of the Michigan Law Revision Commission report (December 17, 1970).

[3] The Revision Commission recommended the following provision:

"Sec. 552.21. In an action for divorce or separate maintenance, the court may award such alimony, support payment for minor children or division of the assets of either spouse as shall be fair and equitable under the circumstances."

[4] *Id.*

[5] *House Journal* 1971, p 637.

[6] *Senate Journal* 1971, pp 1215, 1359, 1368. This amendment stated:

"In an action for the annulment of a marriage, divorce or separate maintenance, the court may award support payments for minor children or division of the real and personal assets of either spouse that is fair and equitable under the circumstances, and alimony on finding of necessity. The court may hear testimony as is necessary in making these awards or in deciding matters of custody."

[7] *House Journal* 1971, pp 2082–2083.

[8] *Senate Journal* 1971, pp 1412–1413.

no modification of existing MCLA 552.23; MSA 25.103.

Thus, while the Legislature drastically altered the conceptual test to be utilized in granting a divorce by the enactment of 1971 PA 75, it clearly rejected attempts to modify the support, alimony, and property division provision of existing law.[9] An extensive body of case law has developed which delineates the factors to be considered in implementing MCLA 552.23; MSA 25.103. The various factors heretofore held to be relevant, including conduct of the parties, remain relevant to a proper adjudication of custody,[10] alimony, support, and property division.

We reverse and remand this case to the Macomb Circuit Court for reassignment to a different judge for further proceedings in accordance with this opinion.

All concurred.

---

[9] Snyder, *Divorce Michigan Style—1972 and Beyond,* 50 Mich State Bar J 740 (1971); Honigman, *What "No-Fault" Means to Divorce,* 51 Mich State Bar J 16 (1972).

[10] As to factors to be considered in awarding custody of a child, see the Child Custody Act of 1970, 1970 PA 91; MCLA 722.21 *et seq.;* MSA 25.312(1) *et seq.*