Hillsborough
No. 7135

DANA A. DESROCHERS v. REAL J. DESROCHERS

October 31, 1975

*Craig, Wenners, Craig & McDowell (Mr. Joseph F. McDowell III orally)* for the plaintiff.

*Clifford J. Ross,* by brief and orally, for the defendant.

KENISON, C.J. The parties married in September 1970. Their only child, a daughter, was born in January 1973. The parties separated in May of that year and the wife brought this libel for divorce the following September. A month later the parties agreed to and the court approved arrangements for custody, visitation and support. The defendant did not support his wife and child from the time of separation until the temporary decree. He made the payments called for by the decree from its entry until June 1975. In July 1974, the Hillsborough County Superior Court, *Loughlin,* J., held a hearing and made certain findings of fact. The critical portion of these findings is: "[T]he action was originally brought because the defendant did not work steadily and stated that he, when he learned that the plaintiff was pregnant, wanted a boy instead of a girl; if the plaintiff bore a girl he would like to put the child up for adoption. After the birth of the child [a daughter] the defendant became very attached to the child, has visited the child weekly except on two occasions, and has been faithfully making support payments under the temporary order of $25.00 a week. The defendant claims that he loves his wife, does not want a divorce. The wife claims that she no longer loves her husband, but since the filing of the divorce he has been an industrious worker and is very attached to the child." The superior court transferred without ruling the question "whether, on all the findings of fact, cause exists for granting a divorce under the provisions of RSA 458:7-a." This appeal was argued in September 1975. At the argument, counsel informed the court that the defendant had stopped making support payments and had gone to Nevada in June 1975. At that time he had written to his attorney expressing his desire to remain married.

RSA 458:7-a (Supp. 1973) provides: "A divorce from the bonds of matrimony shall be decreed, irrespective of the fault of either party, on the ground of irreconcilable differences which have caused the irremediable breakdown of the marriage. In any pleading or hearing of a libel for divorce under this section, allegations or evidence of specific acts of misconduct shall be improper and inadmissible, except where child custody is in issue and such evidence is relevant to establish that parental custody would be detrimental to the child or at a hearing where it is determined by the court to be necessary to establish the existence of irreconcilable differences. If, upon hearing of an action for divorce under this section, both parties are found to have committed an act or acts which justify a finding of

irreconcilable differences, a divorce shall be decreed and the acts of one party shall not negate the acts of the other nor bar the divorce decree." This section must be applied in conjunction with RSA 458:7-b (Supp. 1973) which precludes divorce when "there is a likelihood for rehabilitation of the marriage relationship" or when "there is a reasonable possibility of reconciliation." *Woodruff v. Woodruff*, 114 N.H. 365, 367-68, 320 A.2d 661, 663 (1974).

RSA 458:7-a (Supp. 1973) is the product of a national discussion regarding the proper grounds for divorce. It follows in important respects the California Family Law Act of 1969. That statute, and others following it, have been criticized for vagueness, but have been held to be sufficiently definite to afford due process of law. *Ryan v. Ryan*, 277 So. 2d 266 (Fla. 1973); *In re Marriage of Walton*, 28 Cal. App. 3d 108, 104 Cal. Rptr. 472 (1972). A consensus has emerged that a period of separation due to marital difficulties is strong evidence of the irremediable breakdown of a marriage. *Cf.* RSA 458:7 VI through XIII. These developments can be traced in the following commentaries: Bodenheimer, *Reflections on the Future of Grounds for Divorce*, 8 J. Fam. L. 179, 198-207 (1968); Foster and Freed, *Divorce Reform: Brakes on Breakdown?*, 13 J. Fam. L. 443, 448-53 (1973); Zuckman, *The ABA Family Law Section v. The NCCUSL: Alienation, Separation and Forced Reconciliation over the Uniform Marriage and Divorce Act*, 24 Cath. U.L. Rev. 61 (1974); and Annot., 55 A.L.R.3d 581 (1974). When asked to interpret a statute similar to RSA 458:7-a, the Florida Court of Appeal stated: "The Legislature has not seen fit to promulgate guidelines as to what constitutes an 'irretrievably broken' marriage. It is suggested that this lack of definitive direction was deliberate and is desirable in an area as volatile as a proceeding for termination of the marital status. Consideration should be given to each case individually and pre-determined policy should not be circumscribed by the appellate courts of this State.

"Thus, we are hesitant to set forth specific circumstances which trial courts could utilize as permissible indices of an irretrievable breakdown of the marital status. Were we to attempt to do so, we feel that the basic purpose of the new dissolution of marriage law would be frustrated. Such proceedings would either again become primarily adversary in nature or persons would again fit themselves into tailor-made categories or circumstances to fit judicially defined breakdown situations. It is our opinion that these two problems are the very ones which the Legislature intended to eliminate." *Riley v. Riley*, 271 So. 2d 181, 183 (Fla. App. 1972).

The existence of irreconcilable differences which have caused the irremediable breakdown of the marriage is determined by reference to the subjective state of mind of the parties. *Woodruff v. Woodruff*, 114 N.H. 365, 367, 320 A.2d 661, 663 (1974). While the desire of one spouse to continue the marriage is evidence of "a reasonable possibility of reconciliation," it is not a bar to divorce. If one spouse resolutely refuses to continue and it is clear from the passage of time or other circumstances that there is no reasonable possibility of a change of heart, there is an irremediable breakdown of the marriage. H. Clark, Jr., Domestic Relations § 12.5, at 351 (1968); Comment, *Irreconcilable Differences: California Courts Respond to No-fault Dissolutions*, 7 Loyola of L.A.L. Rev. 453, 459-60, 466, 485 *et seq.* (1974). The defendant may attempt to impeach the plaintiff's evidence of his or her state of mind regarding the relationship. If the trial court doubts plaintiff's evidence that the marriage has irremediably broken down, the court may continue the action to determine if reconciliation is possible. However, if the parties do not reconcile, dissolution should be granted.

Knowledge of the sources of marital discord is helpful in determining whether a breakdown is irremediable or whether there is a reasonable possibility of reconciliation. Yet the statutory test is the existing state of the marriage. The statute authorizes the trial court to receive evidence of specific acts of misconduct where it is determined by the court to be necessary to establish the existence of irreconcilable differences. This authority is an exception to the general rule of the statute excluding such evidence, and the intent of the statute to minimize the acrimony attending divorce proceedings.

The question whether a breakdown of a marriage is irremediable is a question to be determined by the trial court. *Woodruff v. Woodruff*, 114 N.H. 365, 367, 320 A.2d 661, 663 (1974). RSA 458:7-a contemplates the introduction of factual testimony sufficient to permit a finding of irreconcilable differences which have caused the irremediable breakdown of the marriage. *Rodrique v. Rodrique*, 113 N.H. 49, 52, 300 A.2d 312, 314 (1973). Nevertheless there are limits to the inquiry. "In the first place, there is the natural tendency to withhold information of a personal nature from anyone but a trusted and discreet adviser; secondly, any probing into personal matters against the wishes of the party examined would be óbjectionable . . .; and thirdly, the parties have come to court for a purpose. Their answers, which may be perfectly honest ones, will inevitably be slanted in the direction of their ultimate goal, which is divorce." Bodenheimer, *supra* at 200. Within these limits the trial

court must be adequately informed before acting in matters of such importance. But the statute does not contemplate a complete biopsy of the marriage relationship from the beginning to the end in every case. This is a difficult task, but judges face similar problems in other cases. *See Ballou v. Ballou,* 95 N.H. 105, 58 A.2d 311 (1948).

The separation of the parties for two and one-half years and the plaintiff's persistence in seeking a divorce during that period is evidence from which the trial court could find that this marriage has irremediably broken down.

*Remanded.*

All concurred.