**William J. HAGERTY, Petitioner, Respondent,**

v.

**Claire HAGERTY, Appellant.**

No. 48951.

Supreme Court of Minnesota.

June 29, 1979.

Arthur Chapman & Michaelson and Lindsay G. Arthur, Jr., Minneapolis, for appellant.

Trygve A. Egge, Minneapolis, Pokorny, Erickson, Blanchar & Notermann, Minnetonka, for respondent.

Heard before ROGOSHESKE, YETKA, and MAXWELL, JJ., and considered and decided by the court en banc.

STEPHEN L. MAXWELL, Justice.*

Appellant, the respondent below, in a marriage dissolution action appeals from a judgment granting the petition for dissolution and from the order denying her alternative motion for a new trial. We affirm.

Claire and William Hagerty were married in Chicago in 1947 and moved to Minnesota in 1965. They were parents of five children whose ages ranged from 17 to 28 years at the time of the 1978 dissolution proceedings. William had employment problems but was working at time of trial, and Claire, also employed, had started working about 1973. The three youngest children developed serious drug and behavior problems during the last few years of the marriage, and difficulties with communication and discipline precipitated the family's involvement with counseling and treatment programs by 1975, at which time William's alcoholism became apparent. All of those problems were sources of marital discord.

Claire, after unsuccessfully urging William to seek treatment for alcoholism, asked him in the summer of 1976 to leave the home. William moved out in August and filed for divorce in September. He made

several unsuccessful attempts at reconciliation, but testified that no hope of reconciliation remained at the time of the proceedings. Claire claimed the marriage could be saved if William were treated for alcoholism, but she had not otherwise been willing to take him back.

Prior to the hearing on the dissolution petition, Claire had unsuccessfully sought a court order dismissing the petition unless her husband completed treatment for his alcoholism within 6 months and agreed to a one-year after-care program; if thereafter he wanted the dissolution she would not resist.

On April 6, 1978, the trial court dissolved the marriage after finding, among other things, that William suffered from alcoholism, a treatable disease; that it was a principal cause of marital discord which adversely affected his attitude towards the marriage; and that the marriage was irretrievably broken.

The pithy statement in appellant's brief that she "simply suggests that the alcoholism is the culprit and that Petitioner's assessment of the marriage is deluded," sets the scene. She then asks (1) how lucid are the perceptions of an alcoholic about the marriage; (2) whether the same perception would exist after recovery from alcoholism; and (3) whether the petitioner proved that the marriage was irretrievably broken.

■ The record amply supports the finding of serious marital discord, and Minn.St. 1976, § 518.06, subd. 2, expressly permits a finding of irretrievable breakdown upon such evidence.[1]

*Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

1. Minn.St.1976, § 518.06, applies to this action since the appeal was pending prior to the effective date of the 1978 amendment. It provided in pertinent part:

"Subdivision 1. A dissolution of a marriage may be granted by a court of competent jurisdiction upon a showing to the satisfaction of the court that there has been an irretrievable breakdown of the marriage relationship.

"Subd. 2. A court may make a finding that there has been an irretrievable breakdown of the marriage relationship if the finding is supported by evidence of any of the following:

\* \* \* \* \* \*

"(6) Serious marital discord adversely affecting the attitude of one or both of the parties toward the marriage."

The statute was amended by L.1978, c. 722, §§ 22, 23, 63, effective March 1, 1979. Section 63 repealed subd. 2, and the repeal applies to actions pending prior to the effective date unless an appeal was pending or a new trial had been ordered. In that event the law in effect at

Since the record also amply supports the findings of alcoholism as a principal cause of the discord and as a treatable disease, the issue is whether the petitioner's untreated alcoholism can or should defeat findings of discord and breakdown. The "can" issue is one of statutory construction; the "should" issue is one of public policy.

■ 1. *Statutory Construction:* Although irretrievable breakdown was the only ground for dissolution in the 1976 statute, several former grounds were retained in altered form in Minn.St.1976, § 518.06, subd. 2, as evidentiary guidelines for establishing that ground, and the guideline of serious marital discord was added. There was no requirement for reconciliation attempts or stay of dissolution for any specified, limited period. Without requirements indicating a legislative policy of affirmatively encouraging a possibility of reconciliation, the statute contemplates that the likelihood of reconciliation be considered in the determination of irretrievable breakdown along with the evidentiary guidelines.[2]

■ Commentators and cases in other jurisdictions which have interpreted the grounds in no-fault dissolution statutes generally agree that the underlying concern is whether a meaningful marriage exists or can be rehabilitated.[3] With that concern as the central issue, irretrievable breakdown is a fact which can be shown where both parties acknowledge that a breakdown exists at the time of the proceedings and one sees no reconciliation possibility. See, *Flora v. Flora*, 337 N.E.2d 846, 851 (Ind.App. 1975); *Kretzschmar v. Kretzschmar*, 48 Mich.App. 279, 210 N.W.2d 352 (1973). It can also be shown by evidence of only one party's belief that it is the existing state,

particularly where the parties have been living apart. See, *In re Marriage of Franks*, 542 P.2d 845, 852 (Colo.1975); *Smith v. Smith*, 322 So.2d 580 (Fla.App. 1975); *Desrochers v. Desrochers*, 115 N.H. 591, 594, 347 A.2d 150, 152 (1975).

Where one party urged that the marriage situation was remediable but the other refused to pursue counseling or reconciliation, the subjective factor proving irretrievable breakdown was established and dissolution was granted. See, *In re Marriage of Baier*, 561 P.2d 20 (Colo.App.1977); *Kretzschmar v. Kretzschmar*, 48 Mich.App. 279, 210 N.W.2d 352 (1973). In situations where statutes authorize counseling or continuance and the testimony of the party alleging breakdown might be impeachable or doubtful, a continuance is favored over a denial, with dissolution following in the event reconciliation is not accomplished. See, *Riley v. Riley*, 271 So.2d 181, 184 (Fla.App.1972); *Desrochers v. Desrochers, supra;* Comment, 17 U.C.L. A.L.Rev. 1306, 1324–25 and note 135 (1970).

Because the courts look at the existing subjective attitude, evidence of cause is no more determinative than evidence of fault. The Supreme Court of New Hampshire stated in *Desrochers, supra:*

"Knowledge of the sources of marital discord is helpful in determining whether a breakdown is irremediable or whether there is a reasonable possibility of reconciliation. Yet the statutory test is the existing state of the marriage." 115 N.H. 594, 347 A.2d 152.

Similarly, the Supreme Court of Florida declared in *Ryan v. Ryan*, 277 So.2d 266, 271 (Fla.1973):

"* * * The new statutory test for determining if a marriage is irretrievably

---

the time of the order sustaining the appeal of the new trial governs. L.1978, c. 772, § 61(b)(d).

**2.** Compare Minn.St.1976, § 518.06, with N.H. Rev.Stat.Ann. §§ 458:7–a, 458:7–b (Supp.1977) where irremediable breakdown is based upon irreconcilable differences, but divorce is precluded when "there is a likelihood for rehabilitation" or "reasonable possibility of reconciliation."

**3.** See, Foster, *Divorce Reform and the Uniform Act*, 7 Fam. L. Q. 179, 184, 194, 198 and note 74 (1973); Zuckman and Fox, *The Ferment in Divorce Legislation*, 12 J. Fam. L. 515, 601 (1972–1973); Note, 16 N.Y.L.F. 119, 164 (1970); Comment, 17 U.C.L.A.L.Rev. 1306, 1319 (1970); Annot. 55 A.L.R.3d 581, 595 § 5 (1974); New Topic Service Am.Jur.2d, No-Fault Divorce, §§ 9, 17, 23 (1977).

broken is simply whether for whatever reason or cause (no matter whose 'fault') the marriage relationship is for all intents and purposes ended, no longer viable, a hollow sham beyond hope of reconciliation or repair."

Since, here, the issue of breakdown calls for a factual determination and since § 518.06 does not provide for a separate determination of the likelihood of reconciliation, the court could properly consider the impact of treatment upon both the husband's attitude and the existence of serious marital discord. If the evidence established, which it does not, that rehabilitation of this marriage was likely, the court would have been acting within its discretion in continuing the action.

■ Upon the evidence introduced, however, and under the prevailing view of the single ground for dissolution in no-fault statutes, the husband's untreated alcoholism cannot defeat findings of serious marital discord and irretrievable breakdown.

■ 2. *Public Policy*: Appellant presents compelling arguments for requiring treatment before an alcoholic can obtain a marriage dissolution. The arguments are based upon social considerations regarding both divorce and alcoholism, two major public problems, and urge a significant "judicially carved" exception to the statute's liberal policy and broad language.

Both the Florida and New Hampshire courts were faced with similar requests to look beyond findings of irretrievable breakdown, and both espoused the view stated by the Florida court that "predetermined policy should not be circumscribed by the appellate courts * * *." *Riley v. Riley*, 271 So.2d 181, 183 (Fla.App.1972). Accordingly, the courts reasoned:

"'Thus, we are hesitant to set forth specific circumstances which trial courts could utilize as permissible indices of an irretrievable breakdown of the marital

status. Were we to attempt to do so, we feel that the basic purpose of the new dissolution of marriage law would be frustrated. Such proceedings would either again become primarily adversary in nature or persons would again fit themselves into tailor-made categories or circumstances to fit judicially defined breakdown situations. It is our opinion that these two problems are the very ones which the Legislature intended to eliminate.'" *Desrochers v. Desrochers*, 115 N.H. 591, 593, 347 A.2d 150, 152 (1975), quoting *Riley, supra.*

This court recently expressed its rejection of judicial carving with regard to consideration of fault in property distribution decisions and said that the forum for excluding that factor was the legislature. See, *Elliott v. Elliott*, 274 N.W.2d 75, 77 (Minn.1978).[4] Our position is consistent with the settled rule that extensions of statutory provisions are to be made by the legislature rather than the courts. See, *Minneapolis-Honeywell Regulator Co. v. Nadasdy*, 247 Minn. 159, 166, 168, 76 N.W.2d 670, 676, 677 (1956); cf., *Martinco v. Hastings*, 265 Minn. 490, 122 N.W.2d 631 (1963) (specific exemptions cannot be extended by statutory construction).

Based upon that judicial policy, we will not apply the requested alcoholism exception to the findings of discord and breakdown.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

4. The court acknowledged in a footnote that the legislature had subsequently made marital fault an improper consideration in the property distribution decision in L.1978, c. 772, § 53, effective March 1979. *Elliott v. Elliott*, 274 N.W.2d 77, note 7.