Merrimack
No. 88-093

DEBRA L. COULTER

v.

STEVEN D. COULTER

November 4, 1988

*Upton, Sanders & Smith,* of Concord (*Katharine A. Daly* on the brief and orally), for the plaintiff.

*Michael G. Gfroerer P.A.,* of Concord, and *Laura L. Hall,* of Concord (*Michael G. Gfroerer* and *Ms. Hall* on the brief, and *Mr. Gfroerer* orally), for the defendant.

JOHNSON, J. The defendant, Steven D. Coulter, appeals from a judgment denying his motion to dismiss a libel for the divorce of the defendant and the plaintiff, Debra L. Coulter, and from a decree of divorce *nunc pro tunc* by the Superior Court (*Hollman,* J.). The motion for a decree and judgment of divorce was brought by William D. Kelley, Sr., the father of the plaintiff, following her death. The issue before this court is whether it was proper for the

superior court to grant a divorce *nunc pro tunc* when one of the parties to the marriage had died before there had been a hearing on the merits on the libel for divorce. For the reasons stated below, we hold that a hearing is required, and we therefore reverse.

Debra and Steven Coulter were married on April 5, 1980. They had two children. On June 15, 1987, Debra Coulter filed a libel for divorce. The libel and an order of notice were properly served on Steven Coulter on June 24, 1987. The notice informed Mr. Coulter that he was required to file an appearance by August 4, 1987, and a written answer by September 3, 1987. Mr. Coulter failed to file either an appearance or an answer, and thereby defaulted.

On or about October 23, 1987, Debra and Steven Coulter entered into a permanent stipulation in which they agreed that the court should grant them a divorce on the ground of irreconcilable differences. Mr. Coulter also stipulated that he did not desire to be heard at a final hearing on the divorce. The final hearing was scheduled for November 3, 1987. On November 2, 1987, Debra Coulter had an accident which resulted in her hospitalization and subsequent death on November 9, 1987. As a result of these events, the final hearing on the libel for divorce never took place.

On November 19, 1987, Steven Coulter moved to dismiss the divorce libel. Debra Coulter's counsel objected to that motion. On November 24, 1987, William D. Kelley, Sr., the father of Debra Coulter, represented by the same counsel, moved for a decree and judgment of divorce effective as of October 23, 1987. After holding a hearing on the pending motions, the superior court, by an order dated February 8, 1988, denied the motion to dismiss and granted a decree of divorce *nunc pro tunc* to be entered as of November 3, 1987.

The only asset of potential consequence in the plaintiff's estate is a wrongful death action against the owner of the premises where she suffered her fatal injuries. Because the plaintiff died intestate, the question whether it was appropriate for the trial court to grant a divorce *nunc pro tunc* may have great practical consequences. If the decree of divorce *nunc pro tunc* was inappropriate, Steven Coulter, as surviving spouse, would be entitled to receive the first $50,000 of any recovery from the wrongful death action and one-half of anything above $50,000. RSA 556:14; RSA 561:1, I(c). Their two children would be entitled to receive the balance. RSA 556:14; RSA 561:1, II(a). If the court properly entered a divorce *nunc pro tunc*, the children would receive any proceeds in their entirety.

■ The general rule is that a divorce action abates upon the death of either party. *Hazen v. Hazen,* 122 N.H. 836, 838, 451 A.2d 398, 399 (1982) (citing *Leclerc v. Leclerc,* 85 N.H. 121, 122, 155 A. 249, 250 (1931)). Since the principal object of a suit for divorce is the dissolution of the marriage, there is no reason to render a divorce decree once the "marital relation [is] already ended by death." *Kimball v. Kimball,* 44 N.H. 122, 124 (1862). This rule, however, is subject to exceptions; there have been decisions where a divorce *nunc pro tunc* was entered after the death of a party to the divorce. An examination of prior decisions allowing for the entering of such a decree, as well as those denying a divorce *nunc pro tunc,* suggests the circumstances in which such a decree may be appropriate.

In *Kimball, supra* at 124, the court refused to allow the father of a libelant, who had died after serving the libel for divorce upon his wife, to prosecute the libel to a final decree. The court, however, noted:

> "There may, perhaps, be cases where the court might order a decree to take effect from a former term, when the parties were living, where the case was ready for decision at such former term, and the entry of the decree was delayed for the convenience of the court; but that is not this case, the libelant's death having occurred before the entry of the libel in court, and therefore before any of the papers had come into possession of the court."

In *Tuttle v. Tuttle,* 89 N.H. 219, 196 A. 624 (1938), the libelant had remarried after a hearing had been held on an uncontested divorce and a decree rendered, but before the judgment was entered. After the libelant's death, the woman he had married petitioned the court to decree the libelant's divorce effective as of the date of the original hearing. The court allowed for the entry of a divorce *nunc pro tunc* stating that "[e]ntries *nunc pro tunc* are made in furtherance of justice . . . ." *Tuttle, supra* at 221, 196 A. at 625. The court held that the libelant's death had not "so far abated the proceedings that judgment cannot now be entered as of the day when the facts were found and the final conclusion reached." *Id.*

The court in *Tuttle,* in reaching this conclusion, reviewed the circumstances in which the granting of a divorce *nunc pro tunc* was appropriate. The court noted with approval the holding of *Bell v. Bell,* 181 U.S. 175 (1901), that "where property rights are involved a divorce decree does not abate on the death of one of the parties pending an appeal." *Tuttle, supra* at 221, 196 A. at 625; *accord Hazen, supra* at 838, 451 A.2d at 399. It also approved the exception

noted in *Kimball* where the entry of a judgment is delayed for the convenience of the court, and added that delay of entry of a judgment by neglect of a clerk also provided sufficient grounds for a decree *nunc pro tunc. Tuttle, supra* at 220, 196 A. at 625; *accord Walker v. Walker*, 108 N.H. 341, 343, 235 A.2d 520, 522 (1967). In support of this position, the court distinguished between the rendition of a judgment, which it described as a "judicial act," and the entry of a judgment, which it described as a "ministerial act." *Tuttle, supra* at 220, 196 A. at 625 (citing 1 BLACK ON JUDGMENTS § 106 (2d. ed. 1902)).

Allowing the entry of a decree *nunc pro tunc* in the case now before this court would amount to a significant expansion of the doctrine regarding such entries as previously articulated. In the cases in which a judgment *nunc pro tunc* was entered, *see, e.g., Hazen*, 122 N.H. 836, 451 A.2d 398; *Tuttle supra; Bell supra*, a hearing had been held and a judgment rendered. The language found in decisions discussing the entry of a decree *nunc pro tunc* such as "the day when the facts were found and the final conclusion reached," *Tuttle*, 89 N.H. at 221, 196 A. at 625, and "after trial and submission of the case," *Walker, supra* at 343, 235 A.2d at 522, have emphasized the necessity of a prior hearing to support such a decree. In the case before us, there had been no hearing on the libel for divorce.

■ The superior court recognized that the present case deviated in this important respect from cases which allowed the entering of a decree *nunc pro tunc*. The court noted that "[i]n the present case, it was the 'judicial act' of *rendering* a judgment which had yet to be completed at the time of plaintiff's untimely death rather than the ministerial act of merely *entering* the judgment." (Emphasis in original.) The court nevertheless found that the case fit into the "narrow class" of cases where entry *nunc pro tunc* was appropriate, as defined by the court in *Walker supra;* "namely, where clerical errors have prevented entry of judgment at the proper time, or where a party has died before judgment, but after trial and submission of the case," *Walker*, 108 N.H. at 343, 235 A.2d at 522. The court held that "[t]he latter situation is precisely the one which is now before the court." In supporting its conclusion that the present situation, where a party had died before a hearing was held on the libel for divorce, was equivalent to the situation "where a party has died before judgment, but after trial and submission of the case," the court had to determine that "the uncontested divorce hearing was [not] so important that its absence precludes the entry of a divorce decree *nunc pro tunc*." The superior court found that:

"the . . . documents in the Court's file clearly showed that the parties were lawfully married as alleged in the libel, that the Court had jurisdiction of the parties and the cause, and that defendant had been properly served . . . . Both parties had expressly stipulated that irreconcilable differences existed and that the Court should grant a divorce not just to plaintiff but to both parties."

The court therefore concluded that there was no need for a trial which would serve merely as a "judicial stamp of approval." The court's judgment that a hearing is unnecessary in the context of an uncontested libel for divorce constitutes an error as a matter of law.

■ RSA 458:7-a provides for a decree of divorce on the ground of "irreconcilable differences which have caused the irremediable breakdown of the marriage." It also mandates a hearing. That section of the statute states that "[i]f, *upon hearing of an action* for divorce under this section, both parties are found to have committed an act or acts which justify a finding of irreconcilable differences, a divorce shall be decreed . . . ." (Emphasis added.) RSA 458:7-a. The statute allows for a divorce to be decreed "irrespective of the fault of either party," but it does not abdicate the role of the judge. The statute requires that both parties be "*found* to have committed an act or acts which justify" the divorce. (Emphasis added.) RSA 458:7-a. As we have stated previously, "The question whether a breakdown of a marriage is irremediable is a question to be determined by the trial court." *Desrochers v. Desrochers*, 115 N.H. 591, 594, 347 A.2d 150, 153 (1975) (citing *Woodruff v. Woodruff*, 114 N.H. 365, 367, 320 A.2d 661, 663 (1974)). The legislative history of the no-fault statute shows the importance of a judicial hearing. Senator Nixon, a supporter of the bill, stated that the bill "would alleviate all the foolishness, sham and hypocrisy which creates disrespect for our legal system in the minds of those involved in these processes and provides that the sole grounds for divorce may be irreconcilable differences between the parties, *if found to exist as a fact by the judge*." (Emphasis added.) N.H.S. JOUR. 972 (1971).

■ The importance of a judicial determination of irreconcilable differences is made more starkly evident when RSA 458:7-a is read in conjunction with RSA 458:7-b. The latter section requires the court to refer parties to a counseling agency "before or during a hearing" when "there is a likelihood for rehabilitation of the marriage relationship." RSA 458:7-b. Because of this section, a divorce will not be decreed in New Hampshire "until the possibil-

ities of reconciliation have been explored and have failed." *Woodruff*, 114 N.H. at 368, 320 A.2d at 663. Thus, the hearing becomes necessary not only to ensure that the grounds for divorce exist, but also to ensure that the possibility of reconciliation has been explored.

Allowing permanent stipulations and consent to a divorce to take the place of a hearing would result in the State's abdicating any role in the regulation of divorce. The hearing required by RSA 458:7-a would have to be viewed as nothing more than a mere formality if the trial court's order in this case were allowed to stand. Such a result was certainly not envisioned by the drafters of RSA 458:7-a. *See Rodrique v. Rodrique*, 113 N.H. 49, 52, 300 A.2d 312, 314 (1973).

■ Our conclusion that, at the least, a hearing must have been held on the libel for divorce before a divorce *nunc pro tunc* may be granted is consistent with the decisions of courts in other States. *See* 19 A.L.R.3d 648. Courts which have examined the issue have required at the minimum that a hearing have been held and a judgment made. *Id.* Some courts have gone further and required the judgment to have been entered or the decree signed. *See, e.g., Pratt v. Pratt*, 99 Wash. 2d 905, 906, 665 P.2d 400, 401 (1983). This court has not been made aware of any case in which a divorce was decreed *nunc pro tunc* after the death of one of the parties, when there had been no hearing whatsoever before a court. Since the hearing cannot be regarded as a mere formality, the present case, contrary to the superior court's holding, is not equivalent to one "where a party has died before judgment, but after trial and submission of the case." For these reasons, the decree and judgment of divorce *nunc pro tunc* in this case must be vacated and the action for divorce dismissed.

The superior court expressed concern that if a divorce *nunc pro tunc* were not decreed, the children would not benefit from the wrongful death action. However, our decision does not necessitate this result, even if the recovery is less than $50,000. Mr. Coulter is responsible for the support of his two children who are in the temporary custody of William D. Kelley, Sr., and his wife. Thus, any recovery received by Mr. Coulter will be subject to a claim for the children's benefit.

*Reversed and remanded.*

All concurred.