NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2013-554


THE STATE OF NEW HAMPSHIRE

v.

AMY KATHLEEN MOUSER

Argued: June 4, 2015
Opinion Issued: July 15, 2015


Joseph A. Foster, attorney general (Stephen D. Fuller, assistant attorney general, on the brief, and Jason A. Casey, attorney, orally), for the State.


Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.


DALIANIS, C.J. The defendant, Amy Kathleen Mouser, appeals her conviction by jury on one count of possession of a controlled drug (cocaine). See RSA 318-B:2, I (2011). On appeal, she argues that the Superior Court (Delker, J.) erred by denying her motion to suppress evidence obtained from a search of her vehicle. We affirm.

The trial court found the following facts when it denied the defendant's motion to suppress. On June 7, 2012, Joseph Jennings was arrested on drug-related charges and released on personal recognizance bail to the custody of

the defendant. That day, he was also served with a temporary order of protection that prohibited him, and third parties acting on his behalf, from contacting a certain woman.

Approximately 45 minutes after Jennings was released, the woman reported that the defendant was contacting her on Jennings's behalf, in violation of the protective order. Police Officer McGurren went to the woman's residence, where McGurren retrieved drug paraphernalia that the woman said belonged to Jennings.

McGurren then went to the defendant's multi-family residence where it was "pitch black outside." Because there was no available parking in front of the residence, McGurren pulled into the driveway, which "wrapped around" the back of the building. When she spotted the defendant's vehicle, she parked her cruiser in a way that her headlights illuminated the vehicle's interior. She saw two people making furtive movements in the vehicle's front seat. McGurren shined her spotlight on the vehicle and got out of her cruiser. The defendant then emerged from the passenger side of her vehicle and approached McGurren. Jennings, who had been in the driver's seat, also got out of the vehicle. The defendant began yelling at McGurren. When McGurren ordered the defendant to stay back, she complied and stood approximately 10 feet away from the vehicle, although she continued to yell.

McGurren placed Jennings under arrest for violating the protective order. As McGurren secured Jennings in her cruiser, the defendant was still yelling. Because of the furtive movements she had witnessed earlier, McGurren went to the defendant's vehicle and looked through the driver's side window where she saw what she believed to be drug paraphernalia, including two syringes, on the center console. McGurren then arrested the defendant for possession of a controlled drug. She secured the defendant in the cruiser of a second officer, who had arrived to assist. McGurren then seized the drug paraphernalia from the defendant's vehicle and transported Jennings to the police department. The second officer transported the defendant to the police department. At the police department, the defendant told McGurren that the syringes belonged to Jennings.

Before trial, the defendant moved to suppress the evidence obtained from the search of her vehicle. She contended, among other arguments, that the warrantless search of her automobile violated the State and Federal Constitutions because "it was done without reasonable suspicion and/or probable cause, and without her consent" and there was not "a valid exception to the warrant requirement" to justify the search. The State objected to this argument, contending that the "plain view" exception to the warrant requirement justified the search of the vehicle and the seizure of evidence from it.

2

The trial court ruled in favor of the State, concluding that, because the driveway was only semi-private, it was not "deserving of traditional curtilage protection." The court also concluded that the defendant had no reasonable expectation of privacy in the contents of her vehicle that were open to observation by anybody present in the driveway, and, thus, decided that McGurren's observation of the vehicle's contents did not constitute an unlawful search. Finally, the court concluded that McGurren's seizure of the evidence was lawful pursuant to the "plain view" exception to the warrant requirement.

On appeal, the defendant argues that the trial court erred by: (1) determining that the rear parking area was not "deserving of traditional curtilage protection"; and (2) implicitly deciding that McGurren needed neither a warrant nor an exception to the warrant requirement other than the "plain view" exception to search the defendant's vehicle. When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions de novo. State v. Socci, 166 N.H. 464, 468 (2014).

I. Curtilage

We first consider the defendant's curtilage argument, which she raises under both the State and Federal Constitutions. See N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. We address the defendant's argument first under the State Constitution and rely upon federal law only to aid our analysis. See State v. Ball, 124 N.H. 226, 231-33 (1983).

Part I, Article 19 provides that "[e]very subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." The protection of a person's house extends to the home's "curtilage," or "the area immediately surrounding a dwelling house." United States v. Dunn, 480 U.S. 294, 300 (1987). "The boundaries and contents of the curtilage are not easily described." State v. Pinkham, 141 N.H. 188, 190 (1996). "Curtilage questions are fact-sensitive, and courts resolve them by examining the nature of the area at issue and then asking whether such an area is as deserving of protection from governmental intrusion as the house." Id.

Under the New Hampshire Constitution, we have applied a reasonable expectation of privacy test to determine whether an area is within the curtilage, examining whether the defendant has a subjective expectation of privacy in that area and whether that expectation is reasonable. See State v. Smith, 163 N.H. 169, 172-73 (2012); see also State v. Goss, 150 N.H. 46, 48-49 (2003). In deciding whether the defendant's expectation of privacy is reasonable, several factors have guided our inquiry, including: the nature of the intrusion, whether the police had a lawful right to be where they were, and the character of the location searched. Smith, 163 N.H. at 173. We have analyzed the

3

character of the location searched by referring to the following additional factors: the area's proximity to the dwelling; its inclusion within a general enclosure surrounding the dwelling; its use and enjoyment as an adjunct to the domestic economy of the family; and whether the defendant owned the place or controlled access to it and whether it was freely accessible to others. Id. No single factor has been dispositive; "the critical question these factors help to answer is whether a particular area claimed to be within the curtilage is necessary and convenient and habitually used for family purposes and carrying on domestic employment." Id. (quotation omitted); accord Dunn, 480 U.S. at 301 (focusing upon whether an area is "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of [constitutional] protection").

The United States Supreme Court has recently clarified that, under the Federal Constitution, a criminal defendant may also challenge a search based upon a trespass theory. See Florida v. Jardines, 133 S. Ct. 1409, 1414-15, 1417 (2013); see also United States v. Jones, 132 S. Ct. 945, 949-52 (2012). According to the Court, constitutionally protected areas are those specifically listed in the Fourth Amendment to the Federal Constitution: "persons, houses, papers, and effects," U.S. CONST. amend. IV. Jardines, 133 S. Ct. at 1414. The trespass theory "has three requirements: a physical intrusion, on an enumerated interest ('persons[,] houses, papers, and effects'), that is not supported by an implicit license based on social norms." 3A C. Wright & S. Welling, Federal Practice and Procedure: Criminal § 663 (4th ed. Supp. 2015).

The Court explained that, under the Federal Constitution, if the area into which the police intrude is a constitutionally protected area, then the defendant need not also show a reasonable expectation of privacy to establish a Fourth Amendment violation. See Jardines, 133 S. Ct. at 1417; see also Jones, 132 S. Ct. at 952 (stating that the "reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test"); United States v. Duenas, 691 F.3d 1070, 1080-81 (9th Cir. 2012) (explaining that in Jones, "the Court reaffirmed that the home and its curtilage are sacrosanct" and that courts are not required "to apply the reasonable expectation of privacy standard in addition to finding that the subject of the search was 'persons, houses, papers, or effects'" (brackets omitted)). We have not yet addressed the trespass theory, as articulated by the Court in Jardines and Jones, under the State Constitution. See Socci, 166 N.H. at 468-70 (applying trespass theory under Federal Constitution).

On appeal, the defendant focuses primarily upon the federal test, arguing that "McGurren's nighttime entry onto the rear curtilage fell outside the boundaries of the implied invitation" to members of the public to approach the house. See Jardines, 133 S. Ct. at 1414-17. This argument elides over whether the area in question – here, the parking lot in the rear of the defendant's multi-family residence – is constitutionally protected. See id.

The Supreme Court examines four factors to determine whether an area is included within the curtilage of a house: (1) "the proximity of the area claimed to be curtilage to the home"; (2) "whether the area is included within an enclosure surrounding the home"; (3) "the nature of the uses to which the area is put"; and (4) "the steps taken by the resident to protect the area from observation by people passing by." Dunn, 480 U.S. at 301. These factors are similar to those upon which we rely to determine whether a defendant's expectation of privacy in an area is reasonable. See Smith, 163 N.H. at 173. Thus, for the purposes of this appeal, whether the rear parking lot is part of the curtilage of the defendant's residence involves analyzing essentially the same factors under both the State and Federal Constitutions. See id.

Here, the trial court found that McGurren had a legitimate reason for entering the property because she was there to arrest Jennings. The court also found that the defendant's vehicle was parked "out in the open," and that the parking lot at issue served a multi-family residence rather than a single-family home.

The defendant does not challenge these factual findings on appeal. Instead, she argues that the trial court was compelled to find that the parking area was curtilage because it was "behind the house" and "was not visible from the road." The defendant observes that there was no evidence that "there was a door at the rear of this house that visitors commonly used." Thus, she reasons, the parking area was "rear curtilage" that "fell outside the boundaries of . . . implied invitation."

Based upon the trial court's factual findings, we hold that the parking area behind the defendant's home is not part of the curtilage. There is no evidence that the parking lot was bounded or enclosed or used for anything other than parking, which is not a "private" activity. See United States v. Sparks, 750 F. Supp. 2d 384, 389 (D. Mass. 2010); see also Pinkham, 141 N.H. at 191 (concluding that driveway was not entitled to traditional curtilage protection in part because portion at issue was not blocked from view by fences, shrubberies, or the house itself, driveway was not blocked by a gate, and driveway was not posted with "No Trespassing" signs). Moreover, the parking area was "available for the shared benefit" of the multi-family residence. Sparks, 750 F. Supp. 2d at 389-90; see also United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009) (explaining that "it is beyond cavil . . . that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building" (quotation omitted)). Under these circumstances, we conclude that the parking area behind the defendant's residence is not part of the curtilage.

Our conclusion is consistent with the decisions of courts in other jurisdictions. See Mack v. City of Abilene, 461 F.3d 547, 554-55 (5th Cir. 2006) (parking space in apartment complex parking lot is not part of the

5

curtilage of apartment); <u>United States v. Pyne</u>, 175 F. App'x 639, 641 (4th Cir. 2006) (concluding that apartment building's parking garage was not within curtilage); <u>United States v. Cruz Pagan</u>, 537 F.2d 554, 558 (1st Cir. 1976) (holding that a person has no reasonable expectation of privacy in a common parking garage of an apartment building). Because the Federal Constitution provides no greater protection than the State Constitution under these circumstances, we reach the same result under both constitutions. <u>See</u> <u>Dunn</u>, 480 U.S. at 301; <u>see</u> <u>also</u> <u>Smith</u>, 163 N.H. at 173.

## II. Search of Vehicle

We next consider the defendant's arguments regarding the search of her vehicle. The defendant does not directly challenge the trial court's conclusion that she had no reasonable expectation of privacy in the contents of her vehicle that were open to observation by anybody present in the driveway. Nor does she challenge the trial court's determination that the officer's view of the contents of her vehicle did not constitute an unlawful search. Rather, on appeal, she contends that the trial court erred "in construing the plain view doctrine as giving not merely the authority to seize the items [in her vehicle], but also the authority to enter a constitutionally-protected place without a warrant or [an] applicable exception to the warrant requirement."

The State argues that the defendant's appellate arguments about the search of the vehicle are different from those she made in the trial court and, therefore, are not preserved for our review. The defendant agrees that she never "explicitly point[ed] out the inability of the plain view doctrine to justify the police entry of the [vehicle]," but contends that she was not required to do so to preserve her appellate arguments. She asserts that the preservation doctrine only "prevents this Court from considering <u>issues</u> raised on appeal that were not presented in the trial court." (Quotation and brackets omitted.) According to the defendant, the doctrine allows the court to consider any argument made on appeal to support a claim even if that "precise argument" was not also made in the trial court.

As the defendant rightly observes, "[t]he purpose underlying our preservation rule is to afford the trial court an opportunity to correct any error it may have made before those issues are presented for appellate review." <u>State v. Town</u>, 163 N.H. 790, 792 (2012). Based upon our review of the record submitted on appeal, we disagree with the defendant that the trial court had that opportunity.

In the trial court, the defendant's motion to suppress was general, asserting only that the search of her vehicle, without a warrant or an exception thereto, violated her State and Federal constitutional rights. At the hearing on her motion, the defendant argued the following:

6

I think, Judge, in terms of the -- ultimately the -- the search of the motor vehicle, I don't think that you can say that it's a search incident to arrest. I think there's -- there's quite a bit of law on that, and that once Mr. Jennings was secured in the back of the police vehicle there can't be any search of the -- of the motor vehicle.

I think also, when you're dealing with a situation where this vehicle apparently was -- was parked, there's no evidence that it was running, it was on private property, it was on private property where the Defendant resided. There's no search incident to -- search incident to arrest exception to that that would apply here.

In terms of plain view, Judge, I think that that's why I mentioned about was the officer there, was the officer validly in a place where the officer was allowed to be?

And I would suggest, Your Honor, that the officer was not, generally speaking, as I indicated. But the issue then becomes after he's made the arrest that he -- excuse me. After she made the arrest that she went there for, her work is done.

So not only is there generally a problem for lack of probable cause for being there in the first place, but then you have the additional issue of where she has to walk 20 feet to a vehicle, and does she have the right to be in that place at that time where whereupon she sees some items in a motor vehicle? We would say that she does not.

As this excerpt from the hearing demonstrates, in the trial court, the defendant argued only that McGurren was not lawfully in the parking area from which she could observe the contents of the defendant's vehicle. She did not argue in the trial court, as she argues on appeal, that McGurren could not lawfully enter the vehicle to seize the evidence without either a warrant or an exception to the warrant requirement other than plain view. See Horton v. California, 496 U.S. 128, 137 (1990) (explaining that for the plain view exception to the warrant requirement to apply, a police officer must "be lawfully located in a place from which the object can be plainly seen" and "have a lawful right of access to the object itself").

To the extent that the defendant believed that the trial court improperly relied upon the plain view exception to the warrant requirement to justify the officer's entry into her vehicle, it was incumbent upon her to move for reconsideration. The trial court must have had the opportunity to consider any issues asserted by the defendant on appeal; thus, to satisfy this preservation requirement, any issues that could not have been presented to the trial court

7

before its decision must be presented to it in a motion for reconsideration.  See LaMontagne Builders v. Bowman Brook Purchase Group, 150 N.H. 270, 274 (2003); N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002).  The record on appeal, however, does not demonstrate that the defendant filed such a motion.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).

Although preservation "is a limitation on the parties to an appeal and not the reviewing court," and, thus, we have the discretion to waive the preservation requirement, we decline to do so in this case.  Camire v. Gunstock Area Comm'n, 166 N.H. 374, 377 (2014).  As the State asserts, because the defendant did not raise her appellate argument in the trial court, "the trial court made very few (if any) relevant findings of fact or rulings of law."  We agree with the State that the defendant's appellate argument was "neither factually nor legally developed" in the trial court.  Thus, we decline to consider the argument on appeal.

All issues that the defendant raised in her notice of appeal, but did not brief, are deemed waived.  See State v. Ayer, 154 N.H. 500, 519 (2006).

Affirmed.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

8