NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

7th Circuit Court–Dover Family Division
No. 2015-0115


IN THE MATTER OF LYNN MORTNER AND THEODORE MORTNER

Argued: October 15, 2015
Opinion Issued: December 18, 2015


Coughlin, Rainboth, Murphy & Lown, P.A., of Portsmouth (Timothy C. Coughlin on the brief and orally), for the petitioner.


Bianco Professional Association, of Concord (Jason B. Dennis on the brief and orally), for Judith Mortner, temporary administrator of the estate of the respondent, Theodore Mortner.


CONBOY, J. Judith Mortner, temporary administrator of the estate of the respondent, Theodore Mortner (Husband), appeals, and the petitioner, Lynn Mortner (Wife), cross-appeals an order of the Circuit Court (Foley, J.) abating the Wife's divorce action and vacating its prior final divorce decree. For ease of reference, we refer to the temporary administrator of Husband's estate as the Estate. In its appeal, the Estate argues that the trial court erred by abating the divorce action. In her cross-appeal, Wife argues that the Estate lacks standing to contest the abatement and that its appeal, therefore, should be dismissed. She also asserts that the trial court erred when it allowed Husband's counsel to appear at the hearing on her motion to abate the divorce. We decline to dismiss the Estate's appeal and affirm the trial court's decision.

The pertinent facts follow. Husband and Wife were married in July 1987. In October 2013, Wife filed a petition for divorce when she was 70 years old and still working and Husband was approximately 90 years old and still working.

In July 2014, Husband, Wife, and their counsel signed a "Memorandum of Understanding" (MOU) purporting to settle the divorce action. The MOU required Wife to pay Husband "the sum of $250,000 within 30 days of the date of decree," and provided that her "entire interest in American Bailey Mining Company Limited Partnership shall be divided with [Wife] receiving 55% and [Husband] receiving 45%." The MOU stated that its terms "shall be a charge against each party's estate." The MOU further provided that once documents "to effectuate [the] distribution" of Wife's limited partnership interest were executed, "the Divorce may go to judgment." However, "the judgment date" was to be deferred until the limited partnership was divided. The MOU instructed that no decree should issue until counsel notified the court that the limited partnership had been divided. The MOU was "contingent upon confirming that no changes, pledges, transfer or sale of [Wife's] interest has occurred and confirming her interest, which is approximately 1.52% . . . can be divided and transferred to [Husband]." The MOU indicated that both parties "waive[d] attendance at a final hearing."

The MOU was filed with the court in September with a cover letter reminding the court that the divorce decree was not to issue until counsel notified the court that it could issue. On October 29, Husband's counsel hand-delivered to the court a letter advising that the decree could now issue. On October 30, the court signed an order that decreed the parties divorced on the ground of irreconcilable differences, approved the MOU, and incorporated it as part of the divorce decree. Unbeknownst to the court, however, Husband died on either October 28 or October 29. Also unbeknownst to the court, the parties on October 29, through their counsel, entered into an amendment to their proposed final decree of divorce and their MOU. Pursuant to that amendment, should it be impossible to divide Wife's interest in the limited partnership, the parties agreed that Husband, "his heirs, assigns, and estate, shall, forever, be entitled to receive 45% of the gross amount of each and every payment/ distribution/ dividend/ money" paid by the limited partnership, "as a result of [Wife's] status as a Limited Partner."

Wife subsequently filed a motion to reconsider the issuance of the divorce decree, requesting the court to vacate the decree on the ground that, before the court had signed its October 30 order, Husband had died. Counsel for Husband objected to the motion and requested that the court enter a decree nunc pro tunc. Following a hearing in January 2015, the trial court granted Wife's motion and denied Husband's motion. The court ruled that the divorce had abated because of Husband's death and, therefore, the court vacated its prior divorce decree. This appeal and cross-appeal followed.

2

We first address the issue of whether the Estate has standing to pursue its appeal. "In evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect." In re Estate of Couture, 166 N.H. 101, 105 (2014) (quotation omitted). Here, the Estate suffered an injury when the trial court abated the divorce. As the Estate explains in its reply brief, the abatement of the divorce action removed $250,000 and 45% of a stock interest from the estate. Thus, the Estate has been aggrieved by the abatement of the divorce action and has standing to prosecute this appeal. See Acito v. Acito, 898 N.Y.S.2d 133, 134 (App. Div. 2010).

Wife also argues that Husband's counsel should not have been heard at the motion hearing because, at that time, the Estate had not yet been opened and, technically, Husband's counsel lacked a client. For the purposes of this appeal, however, we assume without deciding that the trial court did not err by allowing counsel to participate. See Whitaker v. L.A. Drew, 149 N.H. 55, 59 (2003) (referring to our "emphasis on justice over procedural technicalities").

We next address whether the trial court erred when it abated the divorce action. "The general rule is that a divorce action abates upon the death of either party." Coulter v. Coulter, 131 N.H. 98, 100 (1988). The reason for this general rule "is simple. A marriage is personal to the [people] who were married, and the marriage ends upon the death or the divorce of either spouse." Borris, Abatement of Divorce and Ancillary Proceedings Upon the Death of a Party, 9 No. 2 Divorce Litig. 25, 26 (Feb. 1997). "Since the principal object of a suit for divorce is the dissolution of the marriage, there is no reason to render a divorce decree once the marital relation is already ended by death." Coulter, 131 N.H. at 100 (quotation and brackets omitted).

We have recognized exceptions to this general rule. See id. at 100-01 (discussing cases). In Hazen v. Hazen, 122 N.H. 836, 838 (1982), for instance, we held that the parties' divorce did not abate when the wife died while the husband's appeal was pending because "the controversy relate[d] exclusively to property rights," and "[t]he parties neither contested nor appealed the validity of the divorce itself."

In Tuttle v. Tuttle, 89 N.H. 219 (1938), we concluded that a judgment of divorce should be entered when, before the husband died, the trial court had held a hearing on the merits and had rendered a decree of divorce on the ground of abandonment. Tuttle, 89 N.H. at 219 (preface to opinion), 220-21. We distinguished between "[t]he rendition of a judgment," which we termed a "judicial act," and "[t]he entry of a judgment," which we described as "a ministerial act." Id. at 220 (quotations omitted). Because, before the husband died, the trial court had rendered its judgment that a divorce decree should issue, we concluded that his death did not abate the divorce action and that

3

entry of the divorce decree would further justice. See id. at 219 (preface to opinion), 220-21.

We last considered the abatement rule in Coulter. In that case, the trial court had entered a divorce decree nunc pro tunc after the wife had died and before the trial court had conducted a hearing on the merits of her libel for divorce. Coulter, 131 N.H. at 98-99. We held that in so doing, the trial court erred. See id. We explained that allowing the entry of a decree nunc pro tunc under the circumstances "would amount to a significant expansion of the doctrine regarding such entries as previously articulated" because, in all of our prior cases, a hearing had been held and a judgment rendered before the final decree issued nunc pro tunc. Id. at 101. We held that, particularly given that the hearing was statutorily required, and, thus, not "a mere formality," Coulter was "not equivalent to [a case] where a party has died before judgment, but after trial and submission of the case." Id. at 103 (quotation omitted).

The Estate seizes upon this language in Coulter and argues that the trial court should have entered a decree nunc pro tunc in this case because the relevant statute no longer requires a hearing, and, therefore, before Husband died, the parties had submitted the case to the trial court. See RSA 458:7-a (Supp. 2015) (providing that, in the context of a divorce on the ground of irreconcilable differences, "[t]he [trial] court's findings and decree may be based on oral testimony or written stipulations of the parties"). We disagree.

Although RSA 458:7-a now allows the court to make its findings and decree "based on . . . written stipulations of the parties," RSA 458:7-a, the statute does not abrogate the role of the judge, see Coulter, 131 N.H. at 102. RSA 458:7-a still requires that both parties be "found to have committed an act or acts which justify" the divorce. RSA 458:7-a; see Coulter, 131 N.H. at 102. In addition, RSA 458:7-b (Supp. 2015) still requires the court, before issuing a final decree, to determine whether "there is a likelihood for rehabilitation of the marriage relationship," and, if there is, to "refer the parties to an appropriate counseling agency." RSA 458:7-b; see Coulter, 131 N.H. at 102-03.

Moreover, even without a hearing, the court must still review the parties' stipulation for fairness, and its review is not a "mere formality." Coulter, 131 N.H. at 103. As the trial court explained, "[p]articularly with the waiver of a Final Hearing, the [c]ourt's review and approval of the parties' Permanent Stipulation is an important judicial function." (Emphasis omitted.)

"In a dissolution proceeding, a [trial] court has a duty to protect the interests of both parties and all the citizens of the state to ensure that the stipulation is fair and reasonable to all." In re Marriage of Rettke, 696 N.W.2d 846, 850 (Minn. Ct. App. 2005) (quotation omitted). In deciding whether to approve the parties' stipulation, the trial court has to "exercise its independent judgment to determine whether a stipulation is, on the facts of the case in

4

question, appropriate." Id. at 851. "In doing so, the [trial] court has the authority to refuse to accept the terms of the stipulation in part or in toto." Id. (quotation and brackets omitted); see Bossi v. Bossi, 131 N.H. 262, 265 (1988) (explaining that a master in a divorce proceeding has the discretion "to accept or reject a settlement agreement" based upon the terms of an oral agreement between counsel). "For this reason, what the parties talked about while both were living, and incorporated into a private settlement agreement, is not 'self-executing.'" In re Marriage of Rettke, 696 N.W.2d at 851.

Here, although the parties had entered into a mediated property settlement before Husband died, the trial court had not yet "examined[ ] it, approved it, and incorporated it into a dissolution judgment." Id. Under these circumstances, we hold that Husband's death abated the Wife's divorce action. See id. Although the Estate argues that the abatement rule is "anachronous," and, therefore, should no longer be followed, we decline its invitation to depart from our settled precedent. (Capitalization and italics omitted.) We have reviewed the Estate's remaining arguments on this issue and conclude that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

The Estate argues, in the alternative, that "[e]ven if the divorce abates, the parties entered into an enforceable contractual agreement" that remains enforceable, despite Husband's death. The Estate has not demonstrated that it raised this argument in the trial court. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). In the trial court, the Estate argued that abating the divorce action vitiated the MOU. By contrast, on appeal, the Estate argues that the MOU survives the abatement of the divorce action. Because the Estate has not demonstrated that this appellate argument has been preserved, we decline to review its merits. See State v. Mouser, 168 N.H. ___, ___, 119 A.3d 870, 876-77 (2015).

We also decline to address the Estate's argument that an additional basis "upon which the Divorce Decree could be entered nunc pro tunc" is that the MOU is "the equivalent of a postnuptial agreement." As with the Estate's argument that the MOU survives abatement, its postnuptial agreement argument has not been preserved for our review. See Bean, 151 N.H. at 250; see also J & M Lumber & Constr. Co. v. Smyjunas, 161 N.H. 714, 718 (2011).

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.

5