**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0281, <u>State of New Hampshire v. Charles L. Barcus</u>, the court on February 15, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm.

The defendant, Charles L. Barcus, appeals his conviction, following a bench trial in Superior Court (<u>Wageling</u>, J.), on a charge of possession of marijuana with intent to distribute.  <u>See</u> RSA 318-B:2 (Supp. 2016).  He argues that the trial court erred by denying his motion to suppress evidence seized from his hotel room without a warrant.  When reviewing an order on a motion to suppress evidence, we accept the trial court's findings of fact unless they lack support in the record or are clearly erroneous.  <u>State v. Mouser</u>, 168 N.H. 19, 22 (2015).  We review its legal conclusions <u>de</u> <u>novo</u>.  <u>Id</u>.

In this case, the trial court found that a housekeeper at the hotel had entered the defendant's room through its open door to notify him that his dog had gotten loose, that she smelled marijuana, and that she observed a large trash bag in the bathroom tub; the defendant was not there.  The hotel's manager contacted the defendant to tell him that his dog had escaped, and he told her that he would return to the hotel.  She subsequently notified Salem police detective O'Brien of the housekeeper's observations, and of her conversation with the defendant.  Approximately an hour after the manager had contacted the defendant, O'Brien arrived at the hotel with Detective-Lieutenant Fitzgerald and a third detective, spoke with the housekeeper and manager, and reviewed hotel records regarding the defendant.

O'Brien and Fitzgerald subsequently approached the defendant's room, which was accessible only by a door opening onto an exterior second-floor walkway, detected an odor of marijuana coming from the room, and knocked on the door and a window; no one answered.  Fitzgerald then called for a uniformed officer to come and keep the room secure while they returned to the police station to apply for a search warrant.  Because the hotel is associated with drug activity, and because an hour had elapsed from the time that the manager had contacted the defendant, O'Brien and Fitzgerald decided to enter the room and confirm that it in fact was empty prior to stationing an officer outside of it.  Using a key provided by the hotel, they walked into the room, saw that it was empty, and left, closing the door behind them.  Inside the room,

they smelled marijuana and saw a trash bag in the tub. They did not, however, touch or seize anything, and were inside of the room for less than ten seconds.

Five minutes later, as O'Brien and Fitzgerald were leaving the balcony area to speak with the uniformed officer who had arrived, O'Brien saw a car matching the description of the defendant's car pull up. The defendant exited the car and came up to the part of the balcony where O'Brien was standing. O'Brien asked him if he was the defendant. The defendant confirmed that he was, and expressed concern for his dog. O'Brien told him that, at that time, officers were out looking for his dog, but that he and the other detectives had been called to the hotel because its staff had earlier gone into his room to tell him that his dog had escaped, and had reported smelling marijuana inside it. O'Brien did not disclose that he and Fitzgerald had also entered the room. O'Brien then asked if there was marijuana in the room, to which the defendant responded that he had approximately twenty pounds of marijuana in the room that he used for medicinal purposes. He further stated that there were marijuana oils in his car. After O'Brien asked the defendant if there were other drugs, weapons, or money inside the room, he answered that there was approximately $100,000 in cash inside the room. Prior to asking these questions, O'Brien did not administer Miranda warnings.

Of the three detectives, only O'Brien spoke with the defendant; Fitzgerald was on the phone with a police prosecutor, and the third detective stood nearby. During this conversation, none of the detectives blocked the defendant's path, displayed a weapon, handcuffed or restrained him, told him that he was not free to leave, or asked that he surrender his car keys. The trial court found that, although the defendant appeared to be nervous, he was cooperative. After the defendant disclosed the marijuana and cash, O'Brien asked if he would consent to a search of the room and car, explaining that he was not required to consent. The defendant both orally consented and executed a consent-to-search form. The subsequent search yielded incriminating evidence, including approximately twenty pounds of marijuana in the trash bag and approximately $100,000 in cash.

The defendant moved to suppress the evidence under the State and Federal constitutions, arguing that the initial entry into his room by O'Brien and Fitzgerald was unlawful, that he was entitled to Miranda warnings, and that the evidence was fruit of the unlawful entry and interrogation. In denying the motion, the trial court noted that the entry was justified by exigent circumstances because it was reasonable to suspect that the defendant or an associate might be inside the room destroying evidence. The trial court did not rely upon this justification, however, but instead assumed that the entry was unlawful, and concluded that the defendant's consent purged any taint from it. In finding that the consent purged any taint, the trial court emphasized that there was no causal link between the entry and the consent, that the detectives did not exploit the entry or utilize information obtained from it to obtain consent, that the defendant was unaware of the entry, that the detectives had a

2

good faith basis to seek, and intended to seek, a warrant, that the detectives' sole purpose in entering the room was to confirm its vacancy, and that the entry was brief and consistent with this purpose. In finding that the consent was voluntary, the trial court emphasized that the detectives did not coerce or threaten the defendant, that O'Brien told him he did not have to consent, that the defendant was unaware of the earlier entry, and that his interaction with the detectives was "congenial." Finally, the trial court concluded that the defendant was not in "custody" for purposes of Miranda, noting that the questioning was in a neutral location, that he was not handcuffed, threatened with arrest, shown a weapon, or restrained in any way, that the questioning lasted a total of ten to fifteen minutes, that the detectives did not surround him, and that only O'Brien questioned him.

On appeal, the defendant first argues that he had a reasonable expectation of privacy in his hotel room, that any exigency was "created" by the detectives because there was no possibility that someone was in the room, and that no other exception to the warrant requirement justified the initial entry. He next argues that his consent did not purge the taint of the warrantless entry because, he claims, O'Brien was aware that "there was a good-sized amount of marijuana in [the] room," and because the detectives were aware that he was motivated by concern for his dog. He further contends that his consent was not free and voluntary because his paramount concern was for his dog, because he did not receive Miranda warnings, because he was never told that he was free to leave, because he knew that there was a significant amount of marijuana in the room and that the detectives were also allegedly aware of this fact, and because he knew that if he did not consent, the detectives would likely obtain a warrant. Finally, he argues that, because he did not receive Miranda warnings, and because O'Brien's questions were "tainted" by the warrantless entry, the evidence seized constituted "fruit of the poisonous tree." Thus, he argues that the evidence should have been suppressed pursuant to both the State and Federal Constitutions.

As the appealing party, the defendant has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's well-reasoned order, the defendant's challenges to that order, the relevant law, and the transcript of the hearing on the motion to suppress, we conclude that the defendant has not demonstrated reversible error. See id.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**

3