# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0483, <u>In the Matter of Amy Froebel-Fisher and Richard Fisher</u>, the court on September 21, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The petitioner, Amy Froebel-Fisher (Wife), appeals the final decree entered by the Circuit Court (<u>Rauseo</u>, J.) in her divorce from the respondent, Richard Fisher (Husband). We vacate and remand.

I

The following facts are supported by the record. The parties were married in October 2004. Their child was born in September 2008. The parties separated in August 2021. In November 2021, the parties filed a joint petition for divorce, including a proposed stipulated final decree, parenting plan, uniform support order, a document purporting to waive child support, a vital statistics form, and financial affidavits. In their proposed final decree, the parties waived attendance at a final hearing.

In December 2021, the trial court notified the parties of its intent to hold a hearing in January pertaining to jurisdiction. Following the January hearing, the court issued an order ruling that it had personal jurisdiction over the parties and explaining, in detail, why it could not approve the parties' stipulated agreement. Specifically, the order informed the parties that the court would "not approve the agreement absent a child support order that complie[s] with the child support guidelines." The order also stated that the court would not approve the parties' proposed final decree because, even though the parties had a long-term marriage, the decree awarded Wife "100% of the marital assets." The order stated that if the parties "wish[ed] to file a Final Decree that provides for an equal division of the marital assets, the Court [would] approve same." Finally, the order informed the parties that their proposed parenting plan was "defective as it provide[d] [Husband] with no definite parenting time and [left] him at the mercy of [Wife's] agreement" and it "restrict[ed] [Husband's] freedom [to] associate with [his girlfriend] during his parenting time." The order informed the parties that the court would schedule a "one-hour Review Hearing," and that, in the meantime, "the parties' settlement documents [were] not approved." The review hearing was subsequently scheduled for April 11, 2022.

At the outset of the April review hearing, the trial court explained that the hearing was scheduled for one hour and if Wife's attorney needed more time, another hearing would be scheduled. The court further explained that the one-hour review hearing was "not an uncontested hearing" and that if the parties believed they could proceed by offers of proof and turn the review hearing into an uncontested hearing, the court was "fine with that."

Wife's attorney presented his offer of proof, explaining that he intended to present facts that would "justify and warrant the agreement that was reached between the parties." He began by discussing the proposed parenting plan. Wife's attorney explained that Wife proposed that she have "100 percent of the parenting time, more or less," because of Husband's prior substance misuse and gambling issues. Wife's attorney stated that the parenting plan was intended to allow Wife "to monitor the safety involved with her [child] going to spend time [with Husband] and as long as [Husband] was sober, he would be able to see [their child]."

Regarding child support, Wife's attorney explained that neither party should pay child support to the other because Wife had "taken 100 percent responsibility for paying all of the expenses for [the parties' child], which include[d] private school, will include college, and all of the current activities that she's paying for." In addition, Wife's attorney explained that if Husband was allowed visitation in Michigan, where he resides, Wife would "have to pay for the flights for herself and [the child] as well as hotels to make sure that there [were] safe conditions involved in this." Finally, Wife's attorney explained that the division of marital assets set forth in the parties' proposed final decree was "predicated on the concept of contribution," asserting that Husband did not contribute to the marital household, had dissipated marital assets during the marriage, and was "in and out of work" during the marriage.

Husband, who was self-represented, testified as to his version of the facts. He testified that, because Wife worked long hours, he was the parent who transported the child to and from school and supervised her homework. Husband testified that when Wife moved to Michigan for a career opportunity — a move which spanned at least one year, during which Wife was in Michigan for "50 percent of the time" — he and the child lived alone in New Hampshire, and he "was the one maintaining the household." He acknowledged that he had had a substance misuse problem "quite a few years ago," but that he and his girlfriend "do not do drugs." Husband asked for visitation in Michigan, but also testified that he would like to see his child as often as possible and would be willing to miss a day or two of work every three weeks to travel to New Hampshire to do so. Husband testified as to his current annual salary, and was allowed to submit, without objection, an updated financial affidavit after the hearing.

Wife was then allowed to testify. She testified that "[w]ithout question," Husband "was always a great dad." She also testified that the child and

2

Husband have "a great relationship" and that they speak with one another every day. At the end of the hearing, the trial court explained that it would issue a decision "based upon the offers [of] proof and the testimony." The court stated that both parties had given the court "a real lot to think about as to what's fair and equitable."

In May 2022, the trial court issued a final narrative order, which included a divorce decree, a parenting plan, and a child support order. The court declined to approve the parties' stipulated agreement with respect to property division, child support, and parenting rights and responsibilities because the agreement awarded Wife 100 percent of the marital estate, waived Husband's right to child support, and left Husband's parenting time to Wife's discretion. Wife moved for reconsideration, asserting that neither party had "an opportunity for a full evidentiary hearing on the outstanding issues, nor an opportunity to conduct discovery, or even engage with a mediator to settle on terms that the Court may have accepted," that "the parties lacked the opportunity to fully present their case," and that the trial court's "Notice of Hearing did not provide the parties with any indication that a final trial would be conducted." The trial court denied the motion. This appeal followed.

II

On appeal, Wife argues that the trial court erred by: (1) rejecting the parties' stipulated agreement, and instead issuing a divorce decree that greatly differed from their agreement and impermissibly overrode their intentions; and (2) issuing a final divorce decree without proper notice and after holding only a "review hearing." We address these issues in turn.

The trial court has broad discretion in fashioning a final divorce decree. See In the Matter of Gronvaldt & Gronvaldt, 150 N.H. 551, 554 (2004). We review its decision under the unsustainable exercise of discretion standard. See id. This standard means that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made. In the Matter of Kurowski & Kurowski, 161 N.H. 578, 585 (2011). We will not substitute our judgment for that of the trial court or reweigh the equities. In the Matter of Braunstein & Braunstein, 173 N.H. 38, 47 (2020).

The trial court's discretion necessarily extends to matters such as assigning weight to evidence and assessing the credibility and demeanor of witnesses. Kurowski, 161 N.H. at 585. Conflicts in the testimony, questions about the credibility of witnesses, and the weight assigned to testimony are matters for the trial court to resolve. Id. The trial court's factual "findings . . . are binding upon this court if [they are] supported by the evidence" and are not legally erroneous. Id.

3

"It has long been common practice in New Hampshire for parties in a divorce proceeding to reach a stipulated agreement," like the stipulated agreement in this case, "regarding matters arising out of dissolution of the marital relationship." Estate of Mortner v. Thompson, 170 N.H. 625, 628 (2018). It also "has long been true in this State that agreements between parties in a divorce proceeding, although binding upon them, are not binding upon the trial court." Id. at 630. All that "such an agreement amounts to in this state" is "a recommendation." Id. The parties cannot deprive the trial court "of its authority to determine the disposition of . . . matters involved in a divorce proceeding . . . by purporting to settle the matter on their own terms." Id. at 629.

"In deciding whether to approve the parties' stipulation, the trial court has to exercise its independent judgment to determine whether a stipulation is, on the facts of the case in question, appropriate." In the Matter of Mortner & Mortner, 168 N.H. 424, 429 (2015) (quotation omitted). The trial court has the duty to ensure that the stipulation is "fair and reasonable to all," and such a review "is not a mere formality." Id. After consideration, the trial court "is free to entirely reject the provisions set forth" in the parties' stipulated agreement. Id. The trial court's discretion to reject the parties' stipulated agreement "is especially great in a . . . divorce," such as this one, where a minor child is involved. Bossi v. Bossi, 131 N.H. 262, 265 (1988).

The trial court in this case declined to approve the parties' stipulated agreement with respect to property division, child support, and parenting rights and responsibilities because the agreement awarded Wife 100 percent of the marital estate, waived Husband's right to child support, and left Husband's parenting time to Wife's discretion. Based on our review of the record, we conclude that the court did not unsustainably exercise its discretion by declining to approve the terms of the parties' stipulated agreement.

However, Wife further argues that the hearing notice she received failed to apprise her of the court's "apparent intention to reach the merits" after holding only a "review hearing." According to Wife, "when the court invited the parties to a 'review hearing,' it was not for the purpose of litigating the final merits of a contested divorce."

The trial court has broad discretion in managing the proceedings before it. In the Matter of Conner & Conner, 156 N.H. 250, 252 (2007). We review a trial court's rulings in this area under the unsustainable exercise of discretion standard. Id. To establish that the court erred under this standard, Wife must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of her case. See id. Although the trial court has broad authority to determine the nature and extent of notice in divorce cases, "notice and an opportunity to be heard on the merits cannot be denied altogether." Mauzy v. Mauzy, 97 N.H. 514, 516 (1952).

4

Husband asserts that Wife's argument regarding inadequate notice is waived because it was not raised in her notice of appeal. Based on our review of the record, we agree with Wife that her argument is fairly comprised within the questions raised in her notice of appeal and, therefore, is not waived. See Sup. Ct. R. 16(3)(b) ("The statement of a question presented [in the notice of appeal] will be deemed to include every subsidiary question fairly comprised therein.").

"Under both Part I, Article 15 of the New Hampshire Constitution and the Fourteenth Amendment of the Federal Constitution, an elementary and fundamental requirement of due process is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Douglas v. Douglas, 143 N.H. 419, 423 (1999) (quotation omitted). "In the divorce context, notice to the parties must give . . . actual notice of the hearing and the issues to be addressed." Id. (emphasis added). In Duclos v. Duclos, we reversed the trial court's decision and remanded where the notice to the wife "indicated the matter to be considered was a 'default hearing.'" Duclos v. Duclos, 134 N.H. 42, 45 (1991). We concluded that "from this terse notice a reasonable person receiving the court's notice would not have been fairly informed that a final hearing on the merits in the named divorce action would be held on the scheduled date." Id.

Here, in its order following the hearing on jurisdiction, the trial court declined to approve the parties' stipulated proposed agreements as submitted, and, as set forth above, the court explained the deficiencies in the documents and what the parties needed to do for the court to approve them. The court informed the parties that it would hold a "one-hour Review Hearing," and that, in the meantime, "the parties' settlement documents [were] not approved." Subsequently, a notice of hearing dated February 18, 2022, informed the parties that their case had been scheduled for a one-hour "Review Hearing" on April 11, 2022. (Bolding omitted.) On March 28, 2022, the court denied Wife's "motion to grant judgment of divorce" and her request that it cancel the upcoming review hearing, stating that "[t]he hearing is necessary for the parties to explain the basis of the requests." (Bolding and capitalization omitted.)

Upon this record, we conclude that such notice was insufficient to fairly inform a reasonable person that a final hearing on the merits in a divorce action would be held on the scheduled date. See Duclos, 134 N.H. at 45. Rather, a reasonable person would have understood the purpose of the review hearing to be to explain to the court the circumstances supporting the parties' agreement, after which the court would either reconsider its prior order and approve the stipulated agreement, or instead reaffirm its rejection thereof.

Husband asserts that "[t]he issuance of a divorce decree was clearly a matter pending before the trial court," the trial court "clearly stated its intention to issue final orders irrespective of the parties' agreement," and "Wife

5

never requested additional time or otherwise objected to the court's proceedings." (Bolding omitted.) Based on our review of the record, we disagree that it was clear that the trial court intended to issue final orders following the review hearing. At the beginning of the hearing, the trial judge stated:

> All right. And so I had issued an order regarding why I could not approve the agreement as is currently written. And so this is what this hearing is on. Depending on what's said here today, we'll decide next steps. If somehow I'm convinced that I should approve the agreements, I'll do that. Otherwise, we'll have to have a hearing as to what I should approve.

Given this statement, a reasonable person would have understood that if the trial judge did not approve the parties' stipulated agreements, then a further hearing would be held. Thus, Wife had no reason to believe that final orders would be issued nor any reason to object to the court's proceedings.

Wife explains that "[h]ad [she] known that the 'review hearing' was actually her divorce trial, she would have shown up with witnesses and evidence regarding her own contributions to the maintenance and growth of marital assets, as well as expenses for the child's private high school and expected college, extracurricular activities, health insurance, day-to-day living, and travel and visitation." She also would have "related her understanding of the child's preferences, either through her testimony or a [guardian ad litem]," and would have "insisted on cross-examining [Husband]." Such opportunities were not afforded to the parties under these circumstances. See Duclos, 134 N.H. at 45 (holding that the notice sent to the wife "was inadequate to fairly inform her of the nature of the proposed hearing and to adequately prepare for such a hearing" (emphasis added)).

Accordingly, we vacate the trial court's final divorce decree, including parenting plan and uniform support order, and remand for further proceedings consistent with this order.

Vacated and remanded.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**