*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANGELA AGODU,

       Plaintiff-Appellee,

v

ISRAEL AGODU,

       Defendant-Appellant.

UNPUBLISHED
June 22, 2023

No. 362637
Wayne Circuit Court
LC No. 21-105709-DM

Before: SWARTZLE, P.J., and CAVANAGH and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right from the default judgment of divorce entered by the trial court. After reviewing defendant's issues on appeal, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

The parties were married for approximately 25 years. There was one minor child and the parties were generally able to reach an agreement on custody and parenting time. However, defendant argues on appeal that it was error for the trial court to generally adopt plaintiff's proposed default judgment of divorce and he contends that this matter should be remanded for further proceedings.

Plaintiff originally filed a complaint for separate maintenance in June 2021 and defendant filed a counterclaim for divorce. In preparation for mediation, the parties agreed to have multiple assets, including multiple businesses located in both Michigan and Nigeria, appraised by business valuators. Despite an agreement between the parties to jointly select and pay for an individual to conduct the business valuations, plaintiff produced records showing that defendant refused to respond to communications about engaging one of the two individuals proposed to conduct appraisals in time for a pending mediation hearing date. Defendant waited until the day before the mediation hearing to pay an appraiser, which made it impossible to continue with the mediation. The resolution of this case was delayed for months because of defendant's refusal to abide by the trial court's orders regarding discovery and mediation.

Plaintiff moved to have defendant show cause why he should not be held in contempt for his refusal to follow the trial court's order of May 5, 2022, which required they select the business

-1-

valuator and attempt to reach a settlement. At a hearing on June 10, 2022, the trial court found that defendant was not abiding by its orders and the court considered its options, including dismissal of this case, although that appeared to be what defendant was trying to accomplish by his refusal to participate in discovery. Instead, the court sanctioned defendant $5,000 and if that was not paid in two weeks, the court was going to strike his answer and counterclaim. Plaintiff was instructed that she could move forward and file a default.

Apparently after defendant did not pay the $5,000 in sanctions, plaintiff moved for the trial court to grant a default judgment of divorce. Defendant moved for reconsideration of the trial court's ruling to impose sanctions, which the trial court denied on July 27, 2022. The trial court granted the motion to enter the proposed default judgment of divorce on that same day after hearing limited testimony from the parties with regard to the court's jurisdiction, parenting time, and the breakdown of the marriage.

## I. SANCTIONS

Defendant argues that it was error for the trial court to sanction him on the facts of this case. We disagree.

Initially, before reaching the merits of defendant's issues on appeal, we must address plaintiff's argument that all of the issues on appeal are not preserved because defendant did not move to set aside the default or the default judgment. MCR 2.603(A)(1) provides that,

> [i]f a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the clerk must enter the default of that party if that fact is:
>
> (a) known to the clerk of the court, or
>
> (b) verified in the manner prescribed by MCL 1.109(D)(3) and filed with the court in a request for default.

MCR 2.603(A)(3) provides that, "[a]fter the default of a party has been entered, that party may not proceed with the action until the default has been set aside by the court in accordance with subrule (D) or MCR 2.612."

MCR 3.210(B) specifically addresses defaults entered in domestic relations actions and it generally follows the requirements set forth in MCR 2.603. MCR 3.210(B) similarly provides that a default must be entered by the court clerk upon request of a party, notice shall be provided to the defaulted party, and the defaulted party may not proceed with the action until the default has been set aside. The only significant difference is that MCR 3.210(B)(3) provides that one moving to set aside a default must show only good cause and need not also show a meritorious defense.

As discussed in Section II, a default was never entered in the record in this case. We therefore are not convinced that a party subject to a default judgment under MCR 2.313 must comply with MCR 3.210(B)(2)(c), and (3), or MCR 2.603(A)(3), by moving to set aside the default before proceeding with the case when there is nothing indicating that a default was filed or served on that party. Given the lack of compliance with MCR 3.210(B)(2)(a) and (b), even if defendant

had actual notice of the default, he should be excused from following the requirements in the court rules on moving to set aside the default. Accordingly, defendant properly preserved his arguments on appeal by moving for reconsideration of the trial court's ruling to impose sanctions under MCR 2.313.

The trial court sanctioned defendant by entering a default judgment under MCR 2.313(B)(2)(c) for the failure to abide by the court's orders related to discovery. This Court reviews a trial court's decision regarding discovery sanctions for an abuse of discretion. *Swain v Morse*, 332 Mich App 510, 518 n 8; 957 NW2d 396 (2020). A trial court commits an abuse of its discretion when its decision falls outside the range of reasonable outcomes. *Id*.

The parties were ordered to engage in mediation beginning in October 2021. The trial court noted in its order of February 3, 2022, that the evaluations of the businesses had not yet been completed and the parties were returning to mediation. The facts showed that in February 2022, the parties reached an agreement that they would produce certain information, proceed to the next mediation date, and would have their businesses valued by a business valuator whom they agreed upon and also have the marital home appraised. In the trial court's order of May 5, 2022, the following was required of the parties:

> **IT IS FURTHER ORDERED:** Extensive business assets involved. Parties to use either Bruce Knapp or Joseph Cunningham for business evaluations. Parties to attempt to reach a settlement by next court date. CASE WILL BE DISMISSED FOR NO PROGRESS IF NOT RESOLVED BY NEXT COURT DATE.

On May 31, 2022, plaintiff filed her motion to require defendant to show cause for why he should not be held in contempt for failing to comply with the above order. Plaintiff produced extensive records of her counsel's efforts to arrange for mediation in June 2022, and also have an appraiser complete the work necessary to value the businesses in time for that hearing. Despite multiple attempts to have defendant agree to a business valuator, sign an engagement letter, and pay the fee in time, defendant waited until one day before the scheduled mediation to pay a deposit and sign the engagement letter, which did not give the valuator enough time to perform the appraisals.

At the hearing on June 10, 2022, defendant did not appear due to a claimed medical emergency, but his counsel was present. As noted, the trial court sanctioned defendant $5,000 and also ordered that his answer and counterclaim be struck if he did not pay the $5,000. The trial court was also advised that defendant closed the group home he operated, which plaintiff contended was the depletion of a marital asset. The following order was entered after that hearing:

> **IT IS FURTHER ORDERED:** Defendant failed to appear at today's hearing; attorney states he is in the hospital; no documentation has been provided. Defendant has failed to comply with court orders (see record). Court sanctions defendant $5,000 to be paid to the plaintiff by next court date. Defendant's answer and counter-complaint are stricken from the record; Plaintiff to move forward with default and next hearing.

Because it appears that the $5,000 was not paid by defendant, the trial court eventually granted the motion for a default judgment.

This Court's opinion in *Draggoo v Draggoo*, 223 Mich App 415, 423-429; 566 NW2d 642 (1997), provides guidance for reviewing the trial court's ruling in this case. In *Draggoo*, 223 Mich App at 417-418, the defendant was ordered to answer interrogatories, which required at least two motions to compel and the answers produced were not satisfactory. It was apparent that he was not producing bank statements from all of his accounts and business records, as ordered by the court. The court ordered that the defendant pay sanctions of $1,750 and held him in contempt as interim sanctions, although the defendant's medical condition prevented him from serving more than one day. Even though he was ordered to produce the requested discovery upon his release from jail, the defendant instead went to Florida, where he remained, and never produced the ordered discovery. *Id*. at 418-419. The trial court entered a default judgment against the defendant when the court believed it had no other way to deal with the defendant. *Id*. This Court set forth the following guidance and analysis of the issue, see *id*. at 423-429:

> On appeal, defendant argues that the trial court improperly entered a default judgment of divorce against him for his refusal to comply with court orders compelling answers to interrogatories and information about his bank accounts. We disagree.

> MCR 2.313(B)(2) provides in pertinent part:

>> If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:

>> * * *

>> (b) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence;

>> (c) an order . . . rendering a judgment by default against the disobedient party.

> In *Adams v Perry Furniture Co (On Remand)*, 198 Mich App 1, 15-16; 497 NW2d 514 (1993), quoting *Frankenmuth Mut Ins Co v ACO, Inc*, 193 Mich App 389, 396-397; 484 NW2d 718 (1992), this Court observed:

>> "Default judgment is a possible sanction for discovery abuses. MCR 2.313(B)(2)(c). It is, however, a drastic measure and should be used with caution . . . . When the sanction of a default judgment is contemplated, the trial court should consider whether the failure to respond to discovery requests extends over a substantial period of time, whether there was a court order directing discovery that has not been complied with, the amount of time that has elapsed between the violation and the motion for default

-4-

judgment, and whether wilfulness has been shown . . . . The court must also evaluate on the record other available options before concluding that a drastic sanction is warranted . . . . The sanction of default judgment should be employed only when there has been a flagrant and wanton refusal to facilitate discovery, that is, the failure must be conscious or intentional, not accidental or involuntary. . . . We review the trial court's decision to grant a default judgment for an abuse of discretion."

Michigan adopted a no-fault divorce law in 1971. *Kretzschmar v Kretzschmar*, 48 Mich App 279; 210 NW2d 352 (1973). Since that time, it has been the law that a marriage will only be recognized if two parties agree, but a divorce will be granted upon the request of only one of the original marrying parties, i.e., even over the objection of one of the marrying parties. *Id*. at 285. This Court has considered the propriety of granting a default judgment of divorce twice since no-fault divorces were recognized in Michigan.

In *Abadi v Abadi*, 78 Mich App 73, 77-78; 259 NW2d 244 (1977), overruled in part on other grounds in *Stamadianos v Stamadianos*, 425 Mich 1, 10; 385 NW2d 604 (1986), this Court found that the trial court did not abuse its discretion in ordering a default judgment of divorce for failure to comply with discovery orders. In that case, the divorce action had been pending for more than two years when the trial court entered an order requiring the defendant to produce documents. Subsequently, the plaintiff's counsel moved to enforce the order after becoming "justifiably apprehensive of ever receiving the documents in question." *Id*. at 78. Despite the issuance of an arrest warrant after an alimony show cause hearing, the warrant had not been served, and "[t]he record was replete with both testimony and affidavit that the defendant was avoiding service." *Id*. The defendant also indicated that he would not be in court on the trial date and that he was seeking new counsel because his relationship with his attorney had broken down. In finding that the trial court did not abuse its discretion in ordering entry of a default judgment against the defendant, this Court stated:

We realize that dismissing an action or rendering judgment by default for refusal to make discovery are drastic sanctions. Nevertheless, the ultimate power of the court to impose such sanctions is an appropriate remedy where such refusal is flagrant and wanton. We cannot say on review that the present case did not justify such drastic action. [*Id*. at 77.]

Defendant contends that the entry of a default judgment was improper because the trial court, by barring him from presenting any proofs and from cross-examining plaintiff concerning issues of property division, prohibited him from participating in the trial in any meaningful way. To support his contention, defendant cites *Perry v Perry*, 176 Mich App 762; 440 NW2d 93 (1989), where this Court found that the trial court erred in its determination that the defendant failed to show good cause to set aside a default judgment in a divorce action because

the defendant was entitled to participate in the adjudication of the property distribution and to notice at least seven days before the entry of the default judgment, which contained provisions different in kind and amount from the relief demanded in the pleading. In *Perry*, this Court, citing *Wood v DAIIE*, 413 Mich 573, 583-584; 321 NW2d 653 (1982) and *Dollar Rent-A-Car Systems v Nodel Const*, 172 Mich App 738; 432 NW2d 423 (1988), stated:

> The purpose of the notice requirement is to apprise the defaulting party of the possibility of entry of judgment so that he may have an opportunity to participate in any hearing necessary to ascertain the amount of damages or other form of remedy to be granted . . . . This purpose is premised on the distinction between the entry of default and the entry of judgment. The former operates as an admission by the defaulting party that there are no issues of liability, but leaves the issues of damages unresolved until entry of judgment . . . . The latter reduces the default to a judgment for money damages. Once a valid default is taken, the defaulting party remains entitled to full participatory rights in any hearing necessary for the adjudication of damages . . . .

> Plaintiff's complaint for divorce prayed that the court "decree an equitable division of property and debts of the parties hereto." This prayer does not state a specific amount demanded. However, the default judgment contains specific provisions for the division of property and the monetary and legal responsibilities of the parties. Thus, because the default judgment contained provisions different in kind and amount from the relief demanded in the pleading, defendant, even though in default, was entitled to participate in the adjudication of the property distribution and . . . was entitled to notice at least seven days prior to the entry of the default judgment. [*Id*. at 767-768 (citations omitted).]

The trial court's actions in the case at bar were entirely appropriate. The rule set forth in *Wood* that "a defaulting party who has properly invoked his right to jury trial retains that right *if* a hearing is held to determine the amount of recovery" does not apply in an equitable action, such as a divorce action, where there is no right to a jury trial. Because *Wood* is confined to civil actions at law where the defaulting party retained a right to a jury trial, we find that *Perry* was wrong when it indicated that a defaulted party in a divorce case is entitled to full participatory rights in the adjudication of the property division. Further, because the court is required to grant a divorce upon the insistence of only one of the parties, there is no question that a divorce had to be granted in the case at bar. If the court entered a default against defendant, but then allowed him to fully participate in presenting evidence regarding the property division, it would be as if no sanction at all had been imposed for defendant's flagrant disobedience of the court's orders.

In our view, the ultimate sanction of default judgment is a necessary sanction at the trial court's disposal to require compliance with its interim orders in a divorce case. Specifically, under MCR 2.313(B)(2)(b), the court may issue an "order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence." To allow a defaulted party to flout the court's authority but still have an opportunity to contest the property division would thus negate the effectiveness of the court rule as a deterrent in a divorce action. Further, denying a defaulted party in a divorce action full participatory rights in the adjudication of the property division is consonant with the statutory powers of a divorce court. MCL 552.12 . . . provides:

> Suits to annul or affirm a marriage, or for a divorce, shall be conducted in the same manner as other suits in courts of equity; and *the court shall have the power to award issues, to decree costs, and to enforce its decrees*. [Emphasis added.]

As noted in *Wiand v Wiand*, 178 Mich App 137, 144; 443 NW2d 464 (1989), quoting *Schaeffer v Schaeffer*, 106 Mich App 452, 457; 308 NW2d 226 (1981):

> "A court possesses inherent authority to enforce its own directives. A divorce case is equitable in nature, and a court of equity molds its relief according to the character of the case; once a court of equity acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy."

Allowing a defaulted party to participate in the adjudication of the property division in a divorce case would effectively undermine the court's "inherent authority to enforce its own directives" and "[to mold] its relief according to the character of the case." *Id*.

As in *Abadi*, *supra*, we find that the trial court did not abuse its discretion in granting a default judgment in favor of plaintiff as a sanction under MCR 2.313(B)(2) for defendant's refusal to comply with the court's orders compelling answers to interrogatories and information about his bank accounts. The record in this case is replete with defendant's violations of the court's orders and clearly shows that the trial court tried less drastic measures to coerce defendant's compliance with the discovery requests, but to no avail. We find no abuse of discretion by the trial court in granting a default judgment of divorce against defendant, and we find no abuse of discretion in denying defendant permission to participate in the adjudication of the property division. [Footnotes omitted.]

The facts in *Draggoo* are not much different from those in this case. Here, the trial court held settlement conferences beginning in late 2021, giving the parties time to conduct discovery to prepare for mediation. Although it appears that the parties were able to agree on a mediation date in June 2022, the record shows that plaintiff was not allowed to prepare for the hearing by obtaining business valuations for the parties' assets.

-7-

It is apparent that defendant was engaging in delay tactics to prevent the case from being mediated. He was essentially stonewalling the efforts to have the case mediated, despite the trial court's orders that the parties were to have the businesses and the marital home appraised. Defendant refused to sign the engagement letter for the appraisal of the businesses until the last minute when it was apparent that the appraisal could not be performed in time to go ahead with the mediation hearing.

When the trial court was advised about defendant's repeated delays in agreeing to hire an appraiser, the court imposed an interim sanction of $5,000, to be paid in two weeks. When that was not paid, the trial court then struck defendant's answer and counterclaim for divorce—which defendant was told could happen if he did not pay the $5,000. And, in an even more egregious move, the court was advised by plaintiff's counsel that defendant had closed the group home he was operating after he stopped paying the staff, causing them to quit. On that basis, plaintiff believed that defendant had intentionally depleted a marital asset in the interim. It was apparent that defendant was attempting to not only delay a resolution in this case, but also deplete or destroy any assets he controlled. Delaying a resolution in this case until defendant was willing to cooperate with the trial court's orders was no longer an option because he appeared willing to destroy the marital estate before he would agree to participate in these proceedings in good faith.

Because defendant was not willing to abide by the trial court's orders throughout the history of this case in order to amicably resolve the issues between the parties, the trial court did not abuse its discretion by imposing a default judgment as a sanction for his misconduct. The trial court did impose less severe sanctions in the interim, but it was apparent that defendant was unwilling to abide by the court's orders. Allowing him to continue to drag out this divorce might have caused great harm to the marital estate.

Although defendant attempts to distinguish this case from *Draggoo* because there were fewer motions brought to compel compliance and no prior sanctions were imposed, the trial court had attempted to impose lesser sanctions, without success. Furthermore, the harm defendant was attempting to do in this case was more severe than simply not cooperating with discovery and, for that reason, it was appropriate for the trial court not to delay in taking action to sanction his wrongful conduct. Giving defendant more time to comply, even when sanctions had been imposed, was not going to compel his cooperation.

In *Koy v Koy*, 274 Mich App 653, 658-659; 735 NW2d 665 (2007), a similar pattern of refusal to abide by a trial court's orders resulted in the granting of a default judgment as an appropriate sanction. This Court explained that, "[w]hen a trial court must resort repeatedly to orders and sanctions of increasing severity to compel a party's participation in court proceedings, and the party still refuses to comply, the trial court properly exercise its power in entering a default and, if appropriate, a default judgment against that party." *Id*. at 659. Similarly, here, the record of defendant's refusal to cooperate with discovery to move this case to resolution supported the trial court's decision to sanction him by entering a default judgment when it was apparent that he was not willing to cooperate to resolve this case and there was a risk that he would deplete the parties' assets if a default judgment was not entered in this matter.

-8-

## II. DEFAULT

Defendant argues that the trial court should not have entered a default judgment when a default was never entered. This issue was not raised before the trial court and generally issues not raised in the trial court are waived on appeal. See *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008); *Napier v Jacobs*, 429 Mich 222, 233; 414 NW2d 862 (1987). We may, however, exercise our discretion to review such an issue under certain circumstances, including when consideration is necessary to a proper determination of the case or when the issue presents a question of law for which the necessary facts for resolution of the issue have been presented. See *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Because those circumstances exist here, we will consider the issue. Unpreserved issues are reviewed for plain error affecting substantial rights. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *CAJ v KDT*, 339 Mich App 459, 464; 984 NW2d 504 (2021).

While defendant argues that a proper default was never entered into the record by the court clerk, when he moved for reconsideration, defendant acknowledged that the trial court ruled on the record that he was in default. The ministerial act of not entering the default into the record does not warrant granting defendant relief.

Defendant relies on *Dundee Cement Co v Schupbach Bros, Inc*, 94 Mich App 277, 279; 288 NW2d 379 (1979), to argue that because a default was not entered and the court rules were not followed, the default judgment was void *ab initio*. However, in *Emmons v Emmons*, 136 Mich App 157, 163-165; 355 NW2d 898 (1984), this Court disagreed with the analysis of this issue in *Dundee Cement Co*:

> Defendant argues that because plaintiff never filed a default, the default judgment is void *ab initio*. We disagree.
>
> Before a trial court may set aside a default judgment, the defendant must show good cause and a meritorious defense. *Deeb v Berri*, 118 Mich App 556, 561; 325 NW2d 493 (1982).
>
> > "Good cause sufficient to warrant setting aside a default judgment includes: (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements that created the default, or (3) some other reason showing that manifest injustice would result if the default judgment were allowed to stand." *Deeb*, *supra*.
>
> Defendant argues that plaintiff's failure to file and enter a default as required by court rule was a substantial defect or irregularity in the proceedings and that he thus showed good cause to set aside the default judgment.
>
> The entry of a default pursuant to GCR 1963, 520.1 is generally a ministerial act of a court clerk accomplished without giving prior notice to the defaulted party. *Deeb*, *supra*, p 562. A defaulted party who has appeared in the case should receive

-9-

notice of the entry of default in order to have the opportunity to move to set it aside if he or she so chooses. *Id*. Although plaintiff failed to enter a default in this case, the default occurred in open court and on the record when *defendant* moved to have his pleadings withdrawn. Thus, the spirit and purpose of GCR 1963, 520.1 was met. Not only did defendant have notice of a default but defendant, in effect, entered that default himself in open court. Under these circumstances, the failure to file a pleading labeled "default" can hardly be considered a substantial defect or irregularity in the proceedings.

Moreover, defendant has not shown how he is prejudiced by this procedural defect preceding the trial court's entry of the default judgment of divorce. Section 2315 of the Revised Judicature Act, MCL 600.2315 . . . , provides:

> "When a verdict has been rendered in a cause, the judgment thereon shall not be stayed, nor shall any judgment upon confession, or *default*, be reversed, impaired, or in any way affected, by reason of the following imperfections, omissions, defects, matters or things, or any of them, in the pleadings, process, record or proceedings, namely:

> "(11) For any other default or negligence of a clerk or officer of the court, *or of the parties*, or their counselors or attorneys, by which neither party shall have been prejudiced." (Emphasis added.)

Defendant does not argue that he was prejudiced by plaintiff's failure to enter a default. Nor could defendant make such an argument given that his actions amounted to an express consent to a default and, ultimately, to entry of a default judgment of divorce.

We find defendant's reliance upon *McHenry v Village of Grosse Pointe Farms*, 265 Mich 581; 251 NW 783 (1933), and *Dundee Cement Co v Schupback* [sic] *Bros, Inc*, 94 Mich App 277; 288 NW2d 379 (1979), misplaced. In *McHenry*, the Court considered many factors as good cause to set aside the default judgment in addition to plaintiff's failure to enter a default. Moreover, the defendant in that case did show how it was prejudiced by the procedural error in that case. In *Dundee*, this Court did state, relying on *McHenry*, that "[t]he default was not entered, therefore the default judgment was void *ab initio*." 94 Mich App at 279. The *Dundee* Court did not consider whether defendant was prejudiced by the procedural defect. To the extent *Dundee* may be read as creating any per se rule of good cause to reverse a default judgment due to a procedural defect of failure to enter a default, we disagree with it. *McHenry* does not state such a rule, and such a per se rule is contrary to § 2315 of the Revised Judicature Act.

*Dundee Cement Co* is not binding because that decision was issued before 1990. See MCR 7.215(J)(1). This Court instead will follow *Emmons* on this issue when the facts in that case are on point to those in the case at bar. Defendant acknowledged that he was aware that the trial court had entered a default against him at the June 10, 2022 hearing. And if he did not pay the $5,000

-10-

in sanctions, his answer and counterclaim would be stricken. Even though a default was never actually entered by the court clerk, defendant cannot establish that he was prejudiced when the court's order of June 10, 2022 put him on notice that he was facing a default and a possible default judgment for his failure to abide by the court's orders. Accordingly, we conclude that the failure to file a default in this case does not amount to plain error that affected defendant's substantial rights.

### III. AMENDMENT OF COMPLAINT

Next, defendant argues that it was error for the trial court to enter the judgment of divorce when plaintiff originally filed a complaint seeking separate maintenance and she never amended her complaint. The record shows that the parties agreed that plaintiff could amend her complaint to request a divorce.

Plaintiff argues that it was proper for the trial court to enter a default judgment of divorce because MCR 2.603(B)(1)(a) recognizes that a party seeking a default judgment may ask for different relief. However, MCR 3.210(B) is applicable because that is the court rule for default judgments in domestic relations cases. MCR 3.210(B)(4)(a) provides as follows:

> (a) A party moving for default judgment must schedule a hearing and serve the motion, notice of hearing, and a copy of the proposed judgment upon the defaulted party at least 14 days before the hearing on entry of the default judgment, and promptly file a proof of service when:

> (i) the action involves entry of a judgment of divorce . . . under subrule (B)(5)(a);

> (ii) the proposed judgment involves a request for relief that is different from the relief requested in the complaint; or

> (iii) the moving party does not have sufficient facts to complete the judgment or order without a judicial determination of the relief to which the party is entitled.

There is no dispute that defendant was entitled to notice of the request to enter the default judgment when plaintiff acknowledged that she was seeking a divorce, which was relief different from what was originally in her complaint for separate maintenance.

Defendant argues that plaintiff was required to amend her complaint to seek a divorce and not merely rely on her request for a divorce in her motion for a default judgment. It is apparent that defendant agreed to the amendment of the complaint on the record at the hearing on July 29, 2022, when the trial court inquired if plaintiff was still seeking separate maintenance. At that time, the parties agreed that the court could enter a judgment of divorce. Accordingly, an amendment of the complaint was appropriate pursuant to MCR 2.118(C)(1). Because defendant agreed in the trial court that this action could be converted into an action for a divorce, not separate maintenance, he has waived any claim of error involving plaintiff's failure to amend her complaint to request that the court grant the parties a divorce. Intentionally and voluntarily relinquishing a known right constitutes a waiver. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 379;

666 NW2d 251 (2003). Furthermore, when a party expressly agrees with an issue in the trial court, he cannot assume a contrary position on appeal. *Grant v AAA Mich/Wisconsin, Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006). Defendant cannot now claim that error occurred because the complaint was not formally amended.

## IV. PROPERTY DIVISION AND CHILD SUPPORT

Defendant challenges the trial court's ruling with regard to the property division and child support. In *Koy*, 274 Mich App at 659-660, this Court explained that even though a defaulted party may not participate in the adjudication of the property division in a divorce case, the trial court is still obligated to achieve equity when dividing the assets and make findings of fact to support its decision. Accordingly, the following standards apply:

> In a divorce case, this Court must first review the trial court's findings of fact regarding the valuations of particular marital assets under the clearly erroneous standard. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992); *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990). A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.* This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses. *Thames v Thames*, 191 Mich App 299, 302; 477 NW2d 496 (1991). If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable. *Sands v Sands*, 442 Mich 30, 34; 497 NW2d 493 (1993); *Sparks*, *supra* at 151-152. [*Draggoo*, 223 Mich App at 429-430.]

On the issue of child support, child-support orders are reviewed for an abuse of discretion. *Peterson v Peterson*, 272 Mich App 511, 515; 727 NW2d 393 (2006). "An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). This Court "review[s] for clear error . . . the trial court's factual findings underlying its determination of a child-support award." *Id.* See also MCR 2.613(C). "A finding is clearly erroneous if this Court, on all the evidence, is left with a definite and firm conviction that a mistake was made . . . ." *Stallworth*, 275 Mich App at 284.

Because the trial court granted a default judgment, defendant was foreclosed from offering evidence to support his objections or arguments related to the issues of the property settlement and child support. Instead, the trial court confined its review to the proposed judgment to determine if the amounts included in it were consistent with the facts of this case. The court specifically found that the property settlement was fair and equitable. The trial court also presumably approved the amount of child support, which was set at $566 a month in the judgment. However, the trial court did not make any actual findings with regard to the amount of child support or defendant's income in calculating the amount of support. Nonetheless, there does not appear to be any basis for requiring that the trial court revisit the basis for calculating the child-support payments.

MCR 3.210(B) addresses default judgments in domestic relations matters and subsection (5) of that subrule addresses what information the trial court may consider in determining if the proposed judgment should be entered:

> (a) A judgment of divorce . . . may not be entered as a matter of course on the default of a party because of failure to appear at the hearing or by consent, and the case must be heard in open court on proofs taken, except as otherwise provided by statute or court rule.

> (b) Proofs for a default judgment may not be taken unless the proposed judgment has been given to the court. . . .

> (c) The moving party may be required to present evidence sufficient to satisfy the court that the terms of the proposed judgment are in accordance with law. The court may consider relevant and material affidavits, testimony, documents, exhibits, or other evidence.

> (d) In cases involving minor children, the court may take testimony and receive or consider relevant and material affidavits, testimony, documents, exhibits, or other evidence, as necessary, to make findings concerning the award of custody, parenting time, and support of the children.

In this case, the trial court reviewed the proposed default judgment at the hearing held on July 29, 2022, and the court allowed defendant to testify only on the issue of parenting time. The court otherwise would not allow defendant to address the issues involving the property settlement or child support when that was part of the sanction for failing to abide by the trial court's orders. The court instead made its ruling with regard to the reasonableness of the proposed judgment of divorce on the basis of the pleadings alone.

## A. THE PROPERTY DIVISION

Plaintiff was awarded a single business in Detroit, Michigan, Triple C's Care Inc., one of the parties' group homes. The court granted a property located in Nigeria and a rental property also located in Nigeria to defendant. The court awarded a business, Triple C's Innovation Business Resources Limited, and property associated with it in Nigeria, to defendant. He was also awarded Chi Chi Group Home, Inc., a business located in Detroit. The judgment also provided that numerous real properties purchased by the parties at auction during the marriage were not marital property because they were placed in the names of the parties' children and others.

In the trial court, defendant objected to the proposed judgment of divorce on the grounds that Triple C's Care was operated as two businesses and, therefore, he should receive one of them. He admitted that Chi Chi Group Home was no longer operational, but he attributed that to plaintiff's actions; however, he did not explain what she may have done to close that business. He contended that there was another business, D-Favor Investment, which owned a number of investment properties and he stated that plaintiff had transferred them to their children and other parties without his knowledge. He also suggested that if the court could not value the businesses, it should sell them all and split the proceeds. He denied owning a bottling business in Nigeria.

-13-

Plaintiff responded that if Chi Chi Group Home ceased doing business, it was from defendant's attempt to voluntarily decrease his income. She further denied that Triple C's Care was actually two businesses. It was also known by defendant that the business, D-Favor Investment, was no longer the parties' business because it was in the names of the parties' children. Plaintiff produced corporate documents to show that the parties owned a bottling company business in Nigeria, Triple C's Innovation Business Resources Limited.

Although defendant raised objections to the proposed division of assets, it is apparent that he could not contest the valuations of these assets when he was ordered by the trial court to provide discovery and agree to have these assets appraised. In *Draggoo*, 223 Mich App at 430, this Court declined to review the merits of the defendant's argument that the property division was not fair and equitable because of the defendant's refusal to provide discovery as ordered by the court. "Given defendant's steadfast refusal to comply with these orders, he should not be heard to complain that the trial court committed error in its factual findings when he was the party responsible for the alleged errors." *Id*. Furthermore, the Court recognized that the defendant's refusal to answer interrogatories or supply bank documents could be considered a relevant factor in determining an equitable division of property because it is tantamount to an attempt to conceal assets. *Id*.

The record shows that plaintiff received one business asset, Triple C's Care, Inc., which is also her only source of income. Triple C's Care and Chi Chi Group Home are adult-care facilities that the parties each separately operated. Defendant received Chi Chi Group Home in addition to all of the business and real properties in Nigeria. At least one of those properties was a rental unit with multiple tenants, generating rental income. The other property housed the bottling business.

Because of defendant's refusal to cooperate in this matter, he was foreclosed from offering evidence to support his objections on the property division. Nevertheless, the trial court is charged with the duty to make findings of fact to support its decision and allow meaningful appellate review of that decision. See *Koy*, 274 Mich App at 659-660. Here, the trial court summarily concluded on the record that the property division was "a very fair and reasonable settlement under the circumstances." However, because of the limited record and the trial court's failure to make findings of fact, we are unable to confirm that the property division was equitable. See *id*. Accordingly, we vacate the trial court's judgment in this regard and remand for the proceedings necessary to determine an equitable property division and for findings of fact to be set forth on the record, thus allowing for meaningful appellate review if challenged. Defendant may properly be precluded from participating in the remand proceedings, see *id.*, and the trial court may exercise its discretion to redistribute assets if necessary to achieve an equitable property division.

## B. CHILD SUPPORT

In the judgment of divorce, defendant was ordered to pay $566.00 per month for the minor child's support. To arrive at that figure, defendant's income included monthly wages from his employment of $1,126.67, self-employment income of $1,800.00 from Chi Chi Group Home, and other income of $800.00. Defendant contended that $2,600 in monthly wages was not supported by law or evidence. He challenged the $1,800 for income attributed to Chi Chi Group Home when it had ceased operations and he also alleged that the other $800 in income had no known source. According to plaintiff, the above figures were obtained from defendant's own reported income.

In determining a child-support award, the trial court is required to ascertain each parent's net income by considering all sources of income. *Stallworth*, 275 Mich App at 284. The trial court is not limited to considering only a parent's actual income. *Reed v Reed*, 265 Mich App 131, 163; 693 NW2d 825 (2005). The court can consider a parent's assets, *id.*, or the parent's voluntary unexercised ability to earn. *Ghidotti v Barber*, 459 Mich 189, 198; 586 NW2d 883 (1998).

A trial court is required to determine the amount of child support by following the child support formula. According to MCL 552.605(2), a court may deviate from the child support formula and if it does so, it is required to provide its findings on the applicable factors in writing or on the record to support the deviation. See also *Berger v Berger*, 277 Mich App 700, 724; 747 NW2d 336 (2008). Here, there is no argument made that the trial court failed to follow the requirements of the child support formula when calculating the amount of support owed. And it appears that the trial court did not deviate from the child support formula. Accordingly, the failure to provide specific findings or justification for its order of support does not require further supplementation of the record in order to review the amount of support imposed. In addition, the trial court did not appear to impute income to defendant so as to require specific findings on an amount he could earn. See *Ghidotti*, 459 Mich at 198-199.

We conclude that there is no merit to defendant's argument that the trial court erred by attributing income of $1,800 a month to him for the group home he operated. Plaintiff demonstrated that the group home was a marital asset producing income for the family and that defendant was responsible for operating it. However, since this action was filed, defendant had ceased operating it for unknown reasons. This otherwise was an asset that the trial court could include in calculating the amount of support due.

As for the $800 in monthly income, the record shows that defendant had business interests in Nigeria. He was awarded a rental property in Nigeria with multiple units and he also received the bottling business in the property division. It was not unreasonable to assess $800 a month in additional income from these assets. Because defendant refused to abide by the court's orders and cooperate with discovery, the true values of these assets were not known and he should not be able to set aside the default judgment of divorce due to this uncertainty, for which he is responsible. Because it was undisputed that defendant was awarded additional assets that could generate income, we conclude that the trial court's award of $566 a month in child support was adequately supported with evidence in the record.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Anica Letica

-15-